**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA,**
**HARISONBURG DIVISION**

CLERKS OFFICE US DISTRICT COURT
AT HARRISONBURG, VA
FILED
08/14/2026
LAURA A. AUSTIN, CLERK
BY: /s/ Amy Fansler
DEPUTY CLERK

STEPHEN PONIATOWSKI, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

vs.

TREX COMPANY, INC.,

Defendant.

Case No.: 5:26cv108

**CLASS ACTION COMPLAINT**

JURY TRIAL DEMANDED

Plaintiff Stephen Poniatowski ("Plaintiff" or "Mr. Poniatowski"), individually and on behalf of all those similarly situated, files this proposed class action suit against Defendant Trex Company, Inc. ("Trex" or "Defendant"), based upon his personal knowledge as to facts specific to him in an individual capacity and based upon the investigation of counsel in all other respects, and alleges as follows:

## I. INTRODUCTION

1. Trex describes itself as "the world's largest manufacturer of wood-alternative decking products" that commands "the largest market share of composite decking in North America" and "$1.2 billion in annual sales."[1]

2. Trex designs, manufactures, markets, distributes, and composite decking boards that consumers can use to build decks outside their homes. This includes the "Trex Enhance" product line (the "Class Decking"), which Trex markets as premium, durable, and designed for use in residential exterior decks.

[1] *See Our Company*, TREX, https://www.trex.com/our-company/ (last accessed Jun. 16, 2026).

3. When consumers choose to build an outdoor deck, they have several options in terms of materials, including a variety of real wood, treated wood, and composite decking boards. Composite decking is made from a blend of wood fibers and recycled plastic.[2] Accordingly, composites are marketed as offering superior durability to wood and are touted as lower maintenance, particularly because they don't require painting, staining, or sealing.[3] These factors also result in composites costing more than wood.[4]

4. To offer a cheaper, lightweight composite decking board, Trex designed the Class Decking with a scalloped underside, meaning grooves run through the length of each board. Some boards also have grooved edges, which can be used to hide fasteners and other hardware from overhead view.



*Figure 1: Example of Grooved Side Profile of Trex Enhance Decking*[5]

---

2 Brian Gregory, *Composite vs. Wood Decking: Which Is Better for Your Home?*, Lowe's (Mar. 4, 2026), https://www.lowes.com/n/buying-guide/wood-vs-composite-decking?msockid=1a2e32d0bc4b6363101725febd116298.

3 *Id.*

4 *Id.*

5 *Trex Select vs Transcend vs Enhance vs Lineage vs Signature*, DECKSDIRECT, https://www.decksdirect.com/knowledge-builders/trex-decking-lines (last accessed Jun. 22, 2026).

5. Trex's website specifically states that its composite decking products, including the Class Decking, "offer superior durability and performance" that "won't rot, warp, or splinter."[6] It also emphasizes that the Class Decking specifically is "long-lasting," requires "little upkeep," and offers the "durability of composite."[7]

6. In part to convince consumers of the reliability of the Class Decking, Trex offers a 25-year warranty against "material defects in workmanship and materials" for residential users of the Class Decking.[8]

7. Despite these ubiquitous representations, the Class Decking suffers from a uniform defect in the materials and/or workmanship which causes the decking boards to warp well within the warranty period, and often shortly after installation (the "Defect"). The Class Decking is prone to "cupping"—a form of warping where the two side edges of a wood or composite board curl upward, creating a concave shape along the board's width—and "bowing"—warping wherein the two far ends of a wood or composite board curl upward, creating a concave shape along the board's length. Such warping creates a tripping hazard, causes water to pool on the surface of the deck, inhibits the strength and stability of the deck, and reduces its overall aesthetic appeal.

8. The Class Decking fails to live up to the promise of composite products due to the Defect. The Defect is the result of the Class Decking's materials and design. Namely, the composite material the Class Decking is made of, when left unprotected, absorbs moisture and

---

[6] *Trex Frequently Asked Questions*, TREX, https://www.trex.com/why-trex/faq/ (last accessed Jun. 18, 2026).

[7] *Trex Enhance Composite Decking*, TREX, https://www.trex.com/products/decking/enhance/ (last accessed Jun. 18, 2026).

[8] *Trex Decking, Fascia & Cladding Limited Warranty*, TREX, https://online.flippingbook.com/view/861215527/ (last accessed June 18, 2026).

expands.[9] Trex applies a protective polymer cap to the top and sides of the Class Decking to protect it from moisture, but that cap is not applied to the underside of the board.[10] Additionally, the underside of the boards have a scalloped design that increases the surface area exposed to moisture while reducing the rigidity of the board by removing material. Between the propensity of the composite core materials to expand when exposed to moisture, the underside's increased exposure to moisture, and the reduced thickness of the board as a result of the scalloped design, the Class Decking is uniquely predisposed to warping and flexing than a comparably sized composite plank. Trex's design was implemented at least in part to save money, as it reduces the amount of composite material and polymer capping used in each plank.

9. Under normal conditions, homeowners reasonably expect composite decking not to warp and will even pay a premium for durable decking products that will look smooth and remain flat for years after installation. Accordingly, owners of the Class Decking were frustrated when the Defect manifested in their decks shortly after installation, despite investing heavily in proper installation and purportedly "durable" decking boards.

10. Countless frustrated consumers have tried to submit warranty claims to Trex after their Class Decking experienced the Defect. However, despite consumers working with installers certified by Trex who properly followed the installation instructions provided by Trex, Trex baselessly denied warranty claims. In particular, Trex habitually denied warranty claims based on the Defect by claiming that the Class Decking was warping due to minor violations of the installation instructions – violations so minor, in fact, that they could hardly be supported by the

---

[9] Dave Kile, *What is Capped Composite Decking?*, TREX PROTECT BLOG, https://trexprotect.com/blog/what-is-capped-composite-decking/ (last accessed Aug. 5, 2026).

[10] Nick – Loudoun Decks, *Trex Lineage vs Transcend vs Signature: The 2026 Trex Lineup Compared*, LDN DECKS (May 27, 2026), https://ldndecks.com/blog/trex-lineage-vs-transcend-vs-signature.

scant photographic evidence reviewed by their agents. These denials usually come after a long, drawn-out application process that Trex delays every step of the way, only further showing Trex's policy of not honoring its warranties when it comes to the Defect.

11. Many purchasers of the Class Decking have expressed concern and disappointment with the Defect on various internet forums, noting that they paid a premium for Trex decking only to have it start warping shortly after installation. Despite these widespread complaints, Trex has failed to recall the Class Decking or offer any other remedy.

12. Trex knew, and/or was on notice of, the Defect through pre-release testing, product engineering and design review, warranty claims, consumer complaints, installer feedback, and online reviews. Nevertheless, Trex continued to market and sell the Class Decking without disclosing the Defect.

13. In late 2025, Trex quietly changed the scalloped underside design of the Class Decking.[11] Under the new design shown below – described in Trex's own technical literature as the "Trex Enhance 2.0 Deck Board" – the scalloped underside of the Class Decking now has five grooves running through the length of the board, rather than the previous four. While the boards themselves appear to be the same width, the grooves appear to be shallower than those in the previous design.

[11] *Trex Deck Fasteners Update: New Board, New Template*, PREMIUM DECKING SUPPLY, https://www.premiumdeckingsupply.com/trex-deck-fasteners-update/ (last accessed Jun. 22, 2026).




*Figure 2: Side Profile Designs of Trex Enhance and Trex Enhance 2.0 Decking Boards* [12]




*Figure 3: Photo of Old (Top) and New (Bottom) Design of Trex Enhance Decking Boards*[13]

14. Trex made this adjustment to the design of the Class Decking because the original design of the boards resulted in the Defect. Nonetheless, even after making this change, Trex did not remove the older versions of the Class Decking from the market or issue any kind of notice or recall.[14]

---

12 INTERTEK, CCRR-0301, CODE COMPLIANCE RESEARCH REPORT FOR TREX COMPOSITE DECKING, 3 (Mar. 22, 2026), https://online.flippingbook.com/view/718674559/2/.

13 *Trex Deck Fasteners Update: New Board, New Template*, PREMIUM DECKING SUPPLY, https://www.premiumdeckingsupply.com/trex-deck-fasteners-update/ (last accessed Jun. 22, 2026).

14 *Id.*

15. In emails with customers in response to warranty claims since this change was implemented, Trex representatives have even expressly acknowledged that the Defect experienced by consumers is due to the structure of the Class Decking, and production changes have been implemented that supposedly prevent manifestation of the Defect.

16. If Plaintiff and/or other Class members knew of the Defect at the time of purchase, they would not have purchased the Class Decking or would have paid substantially less for it. Plaintiff and other Class members were denied the benefit of the bargain in connection with their purchases.

17. The conduct described herein makes Defendant liable for, among other things, breach of express and implied warranties, and unfair, deceptive, and/or fraudulent business practices. In turn, owners of the Class Decking, including Plaintiff, have suffered an ascertainable loss of money and/or property and/or loss in value. The unfair and deceptive trade practices committed by Defendant caused Plaintiff and the Class members damages, including, but not limited to, loss of value, extensive repair and replacement costs, and loss of use of the Class Decking.

18. Accordingly, Plaintiff brings this action to redress Defendant's misconduct. Plaintiff seeks recovery of damages under state consumer protection statutes—including the Delaware Consumer Fraud Act, 6 Del. Code § 2511, *et seq.*—applicable express and implied warranties, common law fraudulent concealment, and unjust enrichment.

## II. JURISDICTION AND VENUE

19. This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2) and (6) because: (a) there are 100 or more class members; (b) there is an aggregate amount in controversy exceeding $5,000,000 exclusive of interest and costs; and

(c) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states.

20. This Court has personal jurisdiction over Defendant by virtue of its transactions and business conducted in this judicial district. Defendant has transacted and done business, and violated statutory and common law, in the State of Virginia and in this District. Namely, Defendant's headquarters is located in Winchester, Virginia.

21. Venue is proper in this judicial district under 28 U.S.C. § 1391 because Defendant resides in and conducts substantial business in this judicial district.

## III. PARTIES

### A. Plaintiff Stephen Poniatowski

22. Plaintiff Stephen Poniatowski was, at all times relevant hereto, a resident and citizen of the State of Pennsylvania. Mr. Poniatowski also maintains a secondary residence in Oceanview, Delaware (the "Property"), which is where he had the Class Decking installed.

23. On April 23, 2024, Mr. Poniatowski, through his contractor GM Construction, LLC, purchased the Class Decking materials from Wyoming Millwork Co. located in Camden, Delaware. Mr. Poniatowski chose to use Trex decking in part because he previously used Trex decking in another property and knew the brand had a reputation for durability.

24. Mr. Poniatowski purchased 192 units of the Class Decking in twenty-foot lengths, along with Trex hidden fastener clips. Between labor and materials, Mr. Poniatowski spent approximately $32,834.15 to get a deck built on his Property using the Class Decking.

25. Mr. Poniatowski's contractor completed installation of the deck——on or about May 21, 2024. The contractor closely followed the installation instructions provided by Trex. The deck measured approximately 1,161.76 square feet on completion.

26. Within days of completion, Mr. Poniatowski began to notice the boards on his deck were warping significantly. The below images show the warping of the Class Decking shortly after installation in 2024.



*Figure 3a: Deck Photo from May 21, 2024*



*Figure 3b: Deck Photo from July 21, 2024*

27. Mr. Poniatowski waited a few months to see if the warping would subside after the Class Decking acclimated. When the Defect did not subside, he contacted a decking contractor and had them come out to assess the deck. Based on the findings of the contractor that the deck had been properly installed and the warping appeared to be reflective of a problem with the decking itself, Mr. Poniatowski attempted to file a warranty claim with Trex.

28. On or about August 6, 2024, Mr. Poniatowski contacted Trex attempting to file a warranty claim for the Defect in his Class Decking. In his outreach, he requested an employee come out to his property to assess the Class Decking for his warranty claim. Megan Rosenberger, a "Customer Loyalty Advocate" at Trex ("Ms. Rosenberger"), indicated that Trex "do[es] not have representatives that are able to go to customers [*sic*] homes to review." However, she

offered to look through photos of the deck to provide Mr. Poniatowski with "options and next steps."

29. On the same day, Mr. Poniatowski sent a few photos of the Class Decking to Ms. Rosenberger, as requested. On August 7, 2024, Ms. Rosenberger responded stating that "it appears that the boards were not installed in accordance with our guidelines" and, because of that, Trex "would not be able to recommend submitting a [warranty] claim for your concerns, as what your [*sic*] experiencing is not considered a warrantable condition."

30. Ms. Rosenberger somehow claims to have concluded that the Class Decking was not installed correctly based on a handful of photos, which only showed portions of the deck and portions of the Class Decking boards. In her email to Mr. Poniatowski, Ms. Rosenberger indicated, without expressly stating, that the Class Decking was not "gapped" enough between boards in Mr. Poniatowski's deck, meaning that the boards were installed too close to one another. The Trex installation instructions required precise gapping between boards ranging from 1/8" end-to-end or end-to-width to 1/4" when adjacent to solid objects. [15] Mr. Poniatowski's contractor complied with these precise gapping requirements.

31. In her August 7, 2024, email to Mr. Poniatowski, Ms. Rosenberger did not indicate how she reached this conclusion based on the photos alone, especially considering the precise gapping measurements at issue. She also did not specify which specific boards were improperly installed. Additionally, Ms. Rosenberger did not indicate whether her analysis took into account any expansion or contraction of the Class Decking between installation and the date of the photos provided.

---

[15] TREX, 2024 DECKING INSTALLATION GUIDE 23 (2024), https://images.trex.com/is/content/trexcompany/2024_Trex_Decking_Installation_Guide(update)pdf.

32. In the same email, Ms. Rosenberger recommended that, rather than submitting a warranty claim, Mr. Poniatowski gap the Class Decking properly and add additional joists to further support the Class Decking. Accordingly, Mr. Poniatowski reached out to his decking contractor to see if he could come to his property and ensure the gapping on his deck was correct according to Trex's installation guidelines.

33. Mr. Poniatowski's decking contractor indicated that the Class Decking was installed correctly the first time and the issue was clearly the result of faulty materials that were prone to warping. Nonetheless, given Trex's seeming denial of Mr. Poniatowski's warranty request and Trex's allegations that the warping issues were tied to installation errors, the decking contractor agreed to pull up the existing Class Decking and reassemble the deck in accordance with Trex's new recommendations. The decking contractor did this work by the end of August 2024 and made sure to add the additional joists recommended by Ms. Rosenberger.

34. Despite making the exact adjustments recommended by Trex and checking to ensure that the Class Decking was reinstalled according to the instructions provided by Trex, Mr. Poniatowski's Class Decking remained warped. Mr. Poniatowski waited for four full seasonal changes (i.e., one year) to allow the Class Decking to expand and contract as Trex representatives claimed that was the source of the warping, but the warping persisted or worsened.

35. Accordingly, on or about April 21, 2025, Mr. Poniatowski followed up with Ms. Rosenberger asking Trex to reconsider his warranty request from 2024 given that the recommended actions did not resolve the issues caused by the Defect.

36. On April 29, 2025, Ms. Rosenberger recommended filing an actual warranty claim with Trex and requested information to file the request on Mr. Poniatowski's behalf. A formal warranty claim was submitted to Trex on May 5, 2025.

37. On May 8, 2025, Naomi Barnes (Ms. Barnes), the Trex Claims Resolution Specialist assigned to Mr. Poniatowski's warranty claim, emailed Mr. Poniatowski requesting photos of the deck fasteners at the butt joints of the deck. Mr. Poniatowski provided the requested photos on May 11, 2025.

38. On May 16, 2025, Mr. Poniatowski received an email from Ms. Barnes denying his warranty claim. As with Ms. Rosenberger's previous assessment, this denial was based only on assessment of a few photos of the deck after the Defect already manifested, with no physical inspection conducted.

39. Despite the fact that Mr. Poniatowski's contractor ensured the boards were properly gapped and fastened according to Trex instructions and installed additional joists as expressly instructed by Ms. Rosenberger, Ms. Barnes claimed that Mr. Poniatowski's warranty was voided based on inadequate gapping and fastening.

40. As with Ms. Rosenberger's email, Ms. Barnes failed to explain how she reached her conclusion on the precise gapping measurements based on photos alone.

41. Ms. Barnes also indicated that the deck was not adequately fastened because "the photos show that in some areas, only one fastener was used at these [butt] joints." Mr. Poniatowski denies this conclusion as two fasteners were used at each butt joint, as required by Trex, and the photos provided to Trex show the same. Trex provided no explanation for why these boards experience the Defect despite being properly installed.

42. Additionally, Ms. Barnes stated that the "Trex fastening guidelines specify the use of two approved fasteners per joist" and "where two boards meet on a single joist, a 2" x 4" 'nailer' should be installed beneath the joint, with two Trex Hideaway Universal Hidden Fasteners securing each board." This describes the same instructions provided by Ms. Rosenberger, which Mr. Poniatowski's contractor followed precisely. Indeed, Mr. Poniatowski's contractor followed these instructions despite the fact that Trex's installation guide expressly stated that such an installation method was "optional."[16]

43. Even though Mr. Poniatowski's deck is properly installed, the Defect in the Class Decking continues to worsen. The state of the deck's warping is shown below.



*Figure 4a: Photo from February 15, 2026*



*Figure 4b: Photo from April 5, 2026*

---

16 TREX, 2024 DECKING INSTALLATION GUIDE 19 (2024), https://images.trex.com/is/content/trexcompany/2024_Trex_Decking_Installation_Guide(update) pdf.



*Figure 4c: Photo from November 23, 2025*



*Figure 4d: Photo from April 5, 2026*

44. As Mr. Poniatowski noted in his correspondence with Trex representatives, this creates a tripping hazard on his deck and detracts from the visual appeal that led him, at least in part, to select Trex decking in the first place. Mr. Poniatowski paid a substantial premium for the Class Decking based on its visual appeal and its cultivated reputation for durability and longevity, but the Defect has directly undermined the reasons why he made that purchase.

**B. Defendant**

45. Defendant Trex Company, Inc. is a Virginia corporation with a principal place of business located at 2500 Trex Way, Winchester, VA 22601-6520. At all times relevant to Plaintiff's claims, Trex was and is the business entity responsible for the sale, distribution and returns of the Class Decking, including through third-party retailers and suppliers.

46. Trex employs approximately 1,839 employees and operates across the United States and North America.[17] It is stocked in more than 6,700 retail locations worldwide.[18]

[17] Trex Company, Inc., Annual Report (Form 10-K), 6 (Feb. 25, 2026), https://www.sec.gov/Archives/edgar/data/1069878/000119312526068732/trex-20251231.htm.

[18] *Id.* at 2.

47. Defendant Trex utilizes the website https://www.trex.com/ and its related webpages, as well as third-party retailers and suppliers, to market and sell composite decking and related products directly to consumers throughout the United States. Trex is registered to do business in Virginia and other states across the country.

48. Trex also works with third-party retailers, suppliers, and lumberyards, including Home Depot and Lowe's, to distribute the Class Decking and similar products. Trex provides information and marketing materials related to the Class Decking to these third-party retailers and suppliers.

## IV. SUBSTANTIVE ALLEGATIONS

### A. Defendant's Misleading Marketing of the Class Decking

49. Trex consistently markets the Class Decking as premium, durable, long-lasting, visually appealing, and immune to warping when used for residential outdoor decks and installed according to Trex's instructions.[19] These representations were false and misleading.

50. On Trex's website and in its related marketing materials, it states in multiple ways that Trex composite decking products, including the Class Decking, are premium, durable, and long-lasting:

a. Trex products are purported to provide "Decades of Enjoyment" with "Lasting performance that stands up to sun, storms and every backyard party."[20]

b. Trex products are also purported to provide "Innovative Technology" that is "Engineered with smarter materials for durability and performance—backed by warranties that prove it."[21]

---

19 *See Trex Frequently Asked Questions*, TREX, https://www.trex.com/why-trex/faq/ (last accessed Jun. 18, 2026); *Trex Enhance Composite Decking*, TREX, https://www.trex.com/products/decking/enhance/ (last accessed Jun. 18, 2026).

20 *Trex Home Page*, TREX, https://www.trex.com/ (last accessed Jun. 24, 2026).

21 *Id.*

c. Trex decking is purported to be better than wood because it offers "superior durability and performance that you can't get from wood."[22]

d. Trex describes its composite decking products as "Durable & Long Lasting" and states that Trex's "[h]igh-performance decking resists fading, scratches, and stains."[23]

e. "Designed with lasting beauty, incredible durability and easy maintenance, there's no compromising with high-performance decking. We've paired Trex against other types of decking for a head-to-head comparison that proves Trex outdecks, outlasts and outperforms the rest."[24]

f. Trex composite decking is described as "A Deck That Lasts" and notes that "[w]hile wood decks often call it quits around the 15-year mark, Trex is built differently. Performance-engineered for the long haul, Trex decking comes with warranties ranging from 25 to 50 years, depending on your product line."[25]

g. Trex composite decking is described as "Safe & Splinter-Free," noting that Trex decking will "giv[e] you a smooth, safe surface that lasts for years."[26]

h. "Trex composite decking takes durability to the next level. While some Trex products can last up to 50 years, our baseline decking options come with a robust 25-year limited residential warranty."[27]

i. "[U]nlike pressure-treated wood, Trex [decking] is backed by a 25-year limited residential warranty. It's a deck built for the modern world—effortless, durable, and designed to outlast the old way of doing things."[28]

j. Trex composite decking is touted as providing "Durability" and a product pamphlet states: "Composite deck boards that stand up to both weather and

---

22 *Trex Frequently Asked Questions*, TREX, https://www.trex.com/why-trex/faq/ (last accessed Jun. 18, 2026).
23 *Explore Trex Decking*, TREX, https://www.trex.com/products/ decking/ (last accessed Aug. 4, 2026) (referring to Trex decking products as "Durable & Long-Lasting").
24 *Trex Composite vs. the Competition: What's the Best Decking Material?*, TREX, https://www.trex.com/why-trex/deck-material-competitor-comparison/ (last accessed Aug. 4, 2026).
25 *Trex Composite Decking vs. Wood*, TREX, https://www.trex.com/why-trex/deck-material-competitor-comparison/trex-vs-wood/ (last accessed Aug. 3, 2026).
26 *Id.*
27 *Id.*
28 *Id.*

weekend mishaps alike—they won't rot, warp, or splinter, and resists stains."[29]

51. Trex's website and related marketing materials also specifically state that its composite decking products, including the Class Decking, are immune to warping:

a. Trex decking is purported to be better than wood because it "won't rot, warp, or splinter."[30]

b. Trex's product brochure states that Trex composite decking "won't rot, warp, or splinter, and resists stains."[31]

c. Trex's product catalogue similarly states that Trex composite decking "won't rot, warp, or splinter, and resists stains."[32]

d. Trex's own Form 10-K filed with the Securities and Exchange Commission states that "[o]ur composite deck boards do not rot, warp, or splinter," and "eliminat[e] many of wood's major functional disadvantages, which include warping…."[33]

e. In a November 7, 2018 press release from Trex announcing its "reimagined and re-engineered" Enhance decking, which included a new "scalloped profile that is lighter weight and easier for handling and installation," Trex stated that the Class Decking "won't rot, warp, crack or splinter."[34]

52. These durability and longevity claims are made specifically as to the Class Decking on the Trex website as well. On the product page for the Class Decking and in Trex's

---

[29] TREX, 2026 TREX PRODUCT GUIDE: DECKING & RAILING 2, https://online.flippingbook.com/view/738587368/2-3/ (last accessed Aug. 4, 2026).
[30] *Trex Frequently Asked Questions*, TREX, https://www.trex.com/why-trex/faq/ (last accessed Jun. 18, 2026).
[31] TREX, 2026 TREX PRODUCT GUIDE: DECKING & RAILING 2, https://online.flippingbook.com/view/738587368/2-3/ (last accessed Aug. 4, 2026).
[32] TREX, 2026 FULL PRODUCT GUIDE: DECKING & RAILING 6, https://online.flippingbook.com/view/ 67338745/6-7/ (last accessed Aug. 4, 2026).
[33] Trex Company, Inc., Annual Report (Form 10-K), 2–3 (Feb. 25, 2026), https://www.sec.gov/Archives/edgar/data/1069878/000119312526068732/trex-20251231.htm.
[34] *Trex Brings Affordability and Ease to the Outdoors With New Decking and Railing Offerings*, TREX (Nov. 7, 2018), https://www.trex.com/our-company/press/trex-brings-affordability-and-ease-to-the-outdoors-with-new-decking-and-railing-offerings/.

product catalog, Trex refers to its Enhance decking products as "long-lasting decking [that] requires little upkeep" and offers "the durability of composite and the affordability of wood."[35] Press releases from Trex also state that the Class Decking "won't rot, warp or splinter and upkeep is hassle-free with no sanding, staining or sealing required."[36]

53. Retailer websites also include Trex's representations that the Class Decking is durable and immune to warping. For example, the Lowe's website states that the Class Decking "won't rot, warp or splinter, unlike wood."[37] Similarly, the Home Depot website similarly states that the Class Decking "does not let rot, splinter, or warp set in."[38] These representations are provided to retailers by Trex.

54. As Trex is aware, or at least should have been aware, the Class Decking is not immune to warping and, to the contrary, is predisposed to premature warping, as seen by the widespread occurrence of the Defect reported by owners of the Class Decking.

55. The Defect arises in the Class Decking as a result of its design and materials. In particular, the Class Decking is predisposed to warping as a result of: (1) the propensity for the composite core materials to absorb moisture; (2) the uneven exposure of the decking boards to

---

[35] *See Trex Enhance Composite Decking*, TREX, https://www.trex.com/products/decking/enhance/ (last accessed Jun. 24, 2026); TREX, 2026 FULL PRODUCT GUIDE: DECKING & RAILING 24–25, https://online.flippingbook.com/view/67338745/24-25/ (last accessed Aug. 4, 2026).

[36] *Trex Adds Two New Hues With Enhanced Performance to Trex Enhance Decking Line*, TREX, https://www.trex.com/our-company/press/trex-adds-two-new-hues-with-enhanced-performance-to-trex-enhance/ (Sept. 4, 2024); *see also Trex Expands Its Value-Driven Enhance Decking Line With Two New Heat-Mitigating, On-Trend Colors*, TREX, https://www.trex.com/our-company/press/trex-expands-its-value-driven-enhance--decking-line-with-two-new/ (Jan. 20, 2026).

[37] *Trex Enhance Basics 1-in x 6-in x 20-ft Clam Shell Grooved/Scalloped Composite Deck Board 56-Pack*, LOWE'S, https://www.lowes.com/pd/Trex-Enhance-Basics-56-Pack-20-ft-Clam-Shell-Grooved-Composite-Deck-Board/1000815108 (last accessed Jun. 24, 2026).

[38] *Trex 1 in. x 6 in. x 20 ft. Enhance Naturals Toasted Sand Square Edge Composite Deck Board*, HOME DEPOT, https://www.homedepot.com/p/Trex-1-in-x-6-in-x-20-ft-Enhance-Naturals-Toasted-Sand-Square-Edge-Composite-Deck-Board-TS010620E2S01/309912119 (last accessed Jun. 24, 2026).

moisture due to the absence of any protective polymer capping on the bottom of each board; and (3) the scalloped underside design of the boards, which both increases the surface area exposed to moisture and reduces the rigidity of the deck board as a whole. When the bottom of the Class Decking boards is exposed to moisture in normal residential outdoor conditions, the bottom will absorb moisture and expand more than the top of the board, resulting in the warping experienced by consumers like Plaintiff. These defective materials and designs appear uniformly across the Class Decking and cause the Defect, which is latent and undiscoverable by reasonable consumers.

56. Because the Defect compromises the durability, longevity, visual appeal, and immune to warping described by Trex in its marketing materials, the above-described statements were false and/or misleading.

**B. <u>Trex's Exclusive and Early Knowledge of the Defect</u>**

57. Prior to releasing the Class Decking for sale, Trex was in a superior position to know and did in fact know of the Defect and the effects thereof on the durability, longevity, visual appeal, and immune to warping of the Class Decking.

58. Plaintiff and those similarly situated did not, and could not, unravel Trex's pattern of deception and public silence about the Defect.

59. Trex owed Plaintiff and all those similarly situated a duty to disclose the Defect because it knew that the Class Decking possessed the Defect before it was released to the market. Trex did not, however, disclose this information to consumers who were making their purchasing decisions. A reasonable consumer would assume that when marketing materials state that composite decking "won't…warp," and is "long-lasting" and "durab[le]," the composite decking being sold would not warp.

### *i. Trex's Knowledge of the Defect Prior to Release*

60. Trex knew or should have known about the Defect due to its extensive quality controls and pre-release testing process.

61. Trex, like any product manufacturer, tests its products prior to release. In its Form 10-K filed with the Securities and Exchange Commission, Trex notes that it "maintain[s] a quality control testing program."[39]

62. Trex, in conjunction with Intertek Testing Services N.A., Inc., conducted extensive testing on the Class Decking before putting it on the market. This includes testing in accordance with the ASTM International D7032 procedures,[40] which test deck boards for "temperature and moisture effects," "flexural tests," "freeze-thaw resistance," and "creep-recovery."[41] Complete data on such pre-release testing is exclusively within Trex's control and unavailable to Plaintiff and Class members without discovery.

63. Trex also implements ongoing quality control methodologies, such as Six Sigma and Lean Manufacturing, at its manufacturing plants and throughout the design and production process.[42] Each of these methodologies are designed to ensure companies can identify product defects and the root causes of those defects before a product is put out on the market. Accordingly, implementation of these methodologies throughout Trex's design and manufacturing processes should have put Trex on notice of the Defect before the Class Decking was ever made available to consumers.

---

39 Trex Company, Inc., Annual Report (Form 10-K), 4 (Feb. 25, 2026), https://www.sec.gov/Archives/edgar/data/1069878/000119312526068732/trex-20251231.htm.

40 INTERTEK, CCRR-0301, CODE COMPLIANCE RESEARCH REPORT FOR TREX COMPOSITE DECKING, 3 (Mar. 22, 2026), https://online.flippingbook.com/view/718674559/2/.

41 ASTM International, *Abstract of ASTM D7032-21 Testing Procedures*, https://store.astm.org/standards/d7032 (last accessed Aug. 4, 2026).

42 Trex Company, Inc., Annual Report (Form 10-K), 4 (Feb. 25, 2026), https://www.sec.gov/Archives/edgar/data/1069878/000119312526068732/trex-20251231.htm.

Trex's pre-release testing would have revealed the Defect. For example, tests to simulate the real-world impact of temperature fluctuations and moisture on the structure of the Class Decking would have revealed that the Class Decking was prone to premature warping. Because the Defect manifests during foreseeable normal consumer use, Trex's testing would have revealed that the Class Decking suffers from the Defect during normal and foreseeable use by consumers.

***ii. Trex's Knowledge of the Defect After Release***

64. Trex knew or should have known about the Defect due to post-release failure analyses, internet reviews, consumer complaints, warranty claim data, and repair data.

65. Trex, like other sellers of consumer building materials, collects, reviews, and analyzes detailed information about warranty claims, repair requests, or general inquiries made with respect to its decking products. This includes data on the nature and frequency of the issues reported by consumers with respect to the Class Decking, along with the requested relief, such as repair or replacement. Complete data on such warranty claims and product inquiries is exclusively within Trex's control and unavailable to Plaintiff without discovery.

66. Though Trex's warranty and inquiry data is not publicly accessible, it is apparent from publicly available data that a significant percentage of owners of the Class Decking have submitted warranty claims, sought repairs, or submitted inquiries related to the Defect. Trex would have been made aware of the Defect based on the large number of warranty claims and inquiries related to the Defect during the warranty period and shortly after the Class Decking was installed at consumers' homes.

67. Trex also monitors the internet for articles, comments, and posts made about the Defect. Online reputation management ("ORM") is now a standard business practice among most major companies, including Trex, and entails monitoring consumer forums, social media,

and other sources on the internet where consumers can review or comment on consumer services. "Specifically, [ORM] involves the monitoring of the reputation of an individual or brand on the internet, addressing content which is potentially damaging to it, and using customer feedback to try to solve problems before the damage to the individual's or brand's reputation."[43]

68. Thus, Trex reports on social media data reflecting negative consumer data, has a strong presence on various popular platforms, and carefully curates the reputation of its brand and products online.

69. From previous litigation, Trex is on notice that consumers provide feedback about its products online, including on consumer forums and popular social media sites such as Twitter, YouTube, and Reddit.[44] Accordingly, Trex accounts for consumer online behavior in its ORM strategy.

70. As discussed below, numerous online reviews and posts discussing the Defect in the Class Decking made, or at least should have made, Trex aware of the Defect.

71. Numerous consumers of the Class Decking left reviews discussing the Defect in the reviews of the Class Decking on its Home Depot and Lowe's product pages:

Retailer Review #1:

On May 30, 2020, an account named "Mitchell" posted the following in a one-star review on a Home Depot review for the Class Decking:

> Cheap composite decking. Material has a noticeable waviness and doesn't lay flat in between the span of the deck joists.16' boards have a bend in the first and last foot of the

---

43 *Online Reputation*, WEBSOLUTIONS MAINE, https://websolutions-maine.com/online-reputation/ (last accessed Aug. 4, 2026).

44 *See* First Amended Class Action Complaint ¶¶ 26–30, *Mark Okano, et al. v. Trex Company, Inc.*, Civil Case No. CV 09-01878 JW (N.D. Cal.) (discussing online articles and complaints regarding a previous defect in Trex composite decking).

> board. I recommend cutting off the first and last foot of the board. Less than ideal if you need 16' lengths

On July 24, 2020, the Trex Customer Care Team responded, stating:

> Hello Mitchell, We're sorry to hear your product didn't come as expected as we try to take every precaution to ensure that everything arrives safely in good condition. Regarding your decking Trex will be happy to review your concerns via our claims process. To get started please contact our customer care team at 1-800-289-8739 and we discuss the claim process.[45]

<u>Retailer Review #2:</u>

On June 10, 2020, a user named "Wasupdoc" left a one-star review for the Class Decking on its Home Depot product page, stating:

> I have a 10' X 20' front porch with hidden attaching. Looked great the first 2 years. Then came the shrinking of the boards, exposing large gaps. Then the cupping of the edges. Now they are splitting on the sides apart. 4 years after installing a board broke. Actually broke with walking on it by a delivery service. I have contacted home depot and they refer to manufacturer and they say "yep it happens." I followed manufacturers direction for proper instillation. Never will I buy again. I do not recommend you either unless you want to spend the money for just couple years.

The review included the following two photos attached:

[45] *Trex Enhance Naturals 1 in. x 6 in. x 20 ft. Rocky Harbor Grooved Edge Composite Deck Board RH010620E2G01*, HOME DEPOT, https://www.homedepot.com/p/Trex-Enhance-Naturals-1-in-x-6-in-x-20-ft-Rocky-Harbor-Grooved-Edge-Composite-Deck-Board-RH010620E2G01/316430409 (last accessed Aug. 4, 2026).



*Figure 7: Photos from Home Depot Review by User "Wasupdoc"*

On June 15, 2020, Tori from Trex Customer Care responded to the review by user "Wasupdoc", saying:

> Hello Doc, We are sincerely sorry to hear about the issues you are experiencing with the product and would recommend filing a claim online on Trex's website for review of your concerns. Please visit our webpage at trex.com and go to our warranty claim link to get started, or if you need assistance please reach out to our customer care team at 1-800-289-8739 and one of our customer service representatives will be happy to assist. We look forward to speaking with you.[46]

Retailer Review #3:

On February 2, 2021, an account named "johny" left a one-star review for the Class Decking on a Home Depot forum stating: "These boards are cheaply made, hidden fastners (when screws don't break) are not holding anything flat. Avoid these decks. Go with other brands[.]"

On February 5, 2021, the Trex Customer Care Team responded with the following:

> Hello, and thank you for bringing your concerns to our attention. Foremost we want to extend our sincerest apologies concerning any issues that you have faced during installation. Regarding boards laying flat, Trex is a composite board made up of recycled wood and plastic so like all composites the Trex boards naturally expand and contract

46 *Id.*

> which means slight curvature and subtle bowing is a typical characteristic with these materials up to an extent. When the boards are fastened as recommended they are typically drawn down flat to the joists. However if the boards do not go flat after being properly fastened it is possible you could have a warrantable condition. With that said please contact our customer care team at 1-800-289-8739 at your earliest convenience and one of our customer service representatives will be happy to review. We look forward to speaking with you.[47]

Retailer Review #4:

On March 13, 2023, an account named "unhappy" posted the following in a one-star review titled "Unstable" on a Home Depot review forum related to the Class Decking:

> Built a 16x32 ft deck and after less than a year the boards have cupped, causing them to hold water. Boards are also warped and twisted at the ends making them look like snow skies. Trex offered to replace material but will not help with the cost of removal and replacement. Plain wood would have been cheaper and last longer.

On the same day, Trex Customer Care responded to this review stating: "Hi there, we apologize for this experience with the Rocky Harbor boards. Please give us a call at 800-289-8739 so we can give further assistance."[48]

Retailer Review #5:

On April 24, 2023, a verified user named Paul left a one-star review on the Lowe's Class Decking product page titled "Trex Boards warp badly!!" which stated:

> We bought trex boards to do 2 porch's and within 48hr the boards were warping at both ends. They then tell me to call Trex manufacture to go through a warranty claim. We just bought this from lowes 4 days ago and the boards are curling up at both ends. Never will i buy this crap again nor will we buy anything from lowes that has to do with decking!! Boards were installed in Central Florida. Buyers Beware of this cause once you cut it they wont give you your money back!!

On April 25, 2023, Trex Customer Care responded as follows:

47 *Id.*

48 *Id.*

> Hello Paul, we do apologize for this experience with our material and thank you for contacting us. As this should not occur with any of our decking material, we would like to help you find a solution for these concerns. If you would be able to call us at 1-800-289-8739, a member of our team would like to ask you some questions and determine the best course of action to take.[49]

Retailer Review #6:

On September 16, 2023, an account named Mike posted the following in a one-star review for the Class Decking on a Home Depot forum:

> Do not buy this - go to a trex store and get something higher quality. This product pulls at the ends and sags between the joists spaced 2 feet from each other and there's nothing you can do. Good composite is a true rectangle. If you look underneath this trex you'll see they saved money on material by stripping groves out of the boards. Because of that product is flimsy and dips in between the joists and splits up at every single end. I'm shocked this has decent reviews.

On September 18, 2023, the Trex Customer Care Team responded to Mike, saying:

> Hello Mike! Thank you for taking the time to leave us some feedback about our boards. We do apologize that you experienced warping from our boards. However, we would like to mention that the maximum recommended joist spanning for any of our 1x6 boards in a residential application is 16" on center. Unfortunately, anything more than that can cause the boards to sag and warp. If you have any further concerns please contact our customer care team at 1-800-289-8739 so we can further clarify the situation. [50]

Retailer Review #7:

On September 7, 2024, an account named Alex posted the following in a one-star review for the Class Decking on a Home Depot forum: "It is the single worst part of our new construction home. It is warped all over the place from one winter of rain and is much uglier than

---

[49] Trex Enhance Basics 1-in x 6-in x 8-ft Clam Shell Square/Scalloped Composite Deck Board, Lowe's, https://www.lowes.com/pd/Trex-Enhance-Basics-8-ft-Clam-Shell-Composite-Deck-Board/1000763502 (last accessed Aug. 4, 2026).

[50] *Trex Enhance Naturals 1 in. x 6 in. x 20 ft. Rocky Harbor Grooved Edge Composite Deck Board RH010620E2G01*, HOME DEPOT, https://www.homedepot.com/p/Trex-Enhance-Naturals-1-in-x-6-in-x-20-ft-Rocky-Harbor-Grooved-Edge-Composite-Deck-Board-RH010620E2G01/316430409 (last accessed Aug. 4, 2026).

we could have imagined. It makes our luxury home look budget. I'm still bummed about buying. It single handedly ruined our house."

On September 9, 2024, TrexSupport responded to this user, stating: "Hello, foremost we'd like to apologize for your negative experience. In addition, we'd like to learn more about your situation and make things right. If you wouldn't mind giving us a call at 1-800-289-8739 at your earliest convenience, it would be greatly appreciated. We look forward to speaking with you!"[51]

<u>Retailer Review #8:</u>

On September 11, 2024, another account on a Home Depot forum named HomeDepotCustomer posted the following in a one-star review for the Class Decking: "All the boards were terrible warped and tons of scratches and marks."

On September 12, 2024, TrexSupport responded to this user, stating: "Hello, We're so sorry to hear about your experience with our product. We aim to offer 100% customer satisfaction to all of our customers, and would like the opportunity to discuss this further. Please contact us at 1-800-289-8739, and someone from our customer care team will be happy to assist."[52]

<u>Retailer Review #9:</u>

On October 8, 2024, another account on a Home Depot forum named HomeDepotCustomer posted the following in a two-star review for the Class Decking: "Both ends of the boards were warped. One I couldn't use and need to return. Need to support them better during storage at the store."

---

51 *Id.*

52 *Id.*

On October 21, 2024, Trex Customer Care responded, stating: "Hello, we're so sorry to hear about your experience. We aim to offer 100% customer satisfaction to all of our customers and would like the opportunity to discuss this further. Please contact us at 1-800-289-8739, and someone from our customer care team will be happy to assist. Thank you[.]"[53]

Retailer Review #10:

On November 6, 2024, an account named Bur18998 posted the following with a two-star review on a Home Depot forum: "These board came with both ends of the curled up, had to cut approximately one foot off each end, definitely would not recommend purchasing these[.]"

On the same day, Brandi from Trex Customer Care responded:

> Hello Trex Customer. Thank you for reaching out to Trex and bringing your negative experience to our attention. We apologize for the challenges you have faced. If we can assist further, please reach out to us directly 1.800.289.8739 | customercare@trex.com at your earliest convenience, it would be greatly appreciated. We look forward to speaking with you![54]

Retailer Review #11:

On January 8, 2025, an account named HomeDepotCustomer posted the following review in a Home Depot forum: "The delivery service was great but the product is less than expected for the price. The deck boards did not lay flat and turned up on the ends. This showed a dip in the boards after intallation."

On January 9, 2025, a representative with the Trex Customer Care Team responded: "Hi Virgil, thank you for reaching out and for your feedback. I am so sorry to hear of the concerns with your material. We would like to look into this further. When you are able to, please give us a call at 1-800-289-8739 to allow us to review."[55]

---

53 *Id.*
54 *Id.*
55 *Id.*

Retailer Review #12:

On May 23, 2025, another account named Brenda posted the following review titled "Warranty a Joke—IT'S JUNK!" in a Home Depot product review forum:

> Installed in Spring of 2022. Boards are sagging between 16" oc joists. Trex tells me every joist where boards butt has to be doubled and FOUR hidden fasteners installed! What a joke! Stuff is junk. End joints have shrunken to leave 1/2" gap. Oh, but wait. They require gaps for expansion and contraction. How ugly is a gap between board ends? Use solid PVC or wood, not this garbage.

This post included the following photos showing warping of the Class Decking:



*Figure 6: Photos from Home Depot Review by Brenda*

On May 27, 2025, Trex Customer Care responded to Brenda's review, saying: "Hello, we apologize for any inconvenience you have experienced."[56]

56 *Id.*

Retailer Review #13:

On June 11, 2025, another account named LEE posted the following one-star review in a Home Depot product review forum for the Class Decking: "Edge warping on all edges!!!..."

On June 13, 2025, Kim from Trex Customer Care responded to the review from LEE, stating:

> Hello Lee, we're sorry to hear about your experience with the material. Depending on the specific product you have, we have some excellent recommendations that we've tested with great results. Please reach out to us at 1-800-289-8739 or customercare@trex.com, and we'll be happy to assist you.[57]

Retailer Review #14:

On September 5, 2025, an account named Shannon posted the following review titled "Run from this grooved crap." in a Home Depot product review forum:

> In less than a year, the grooved Trex boards warped. My brother, who built the deck for me, built a stellar deck on his Colorado home with a non-grooved boards that were some generation prior to this grooved garbage. They have lasted 20 years. I followed up with Trex, and they wouldn't even send someone out to look at them, and based on pictures, said that my brother had done things incorrectly causing the boards to warp. I did find another decking contractor who said everything was done well. Run from this crap.

This post included the following photos showing warping of the Class Decking:

57 *Id.*



*Figure 5: Photos from Home Depot Review by Shannon*

On October 2, 2025, Kaylee from Trex Customer Care responded to Shannon's review, saying:

> Hello! We're sorry to hear your disappointment with our product. We request customers reach out to us directly so that we can gather more information to provide the best assistance possible. Trex has specific installation requirements in place to help with the success with our products. Trex requires proper gapping and fastening placements for key performance which is outlined in out Decking Installation Guide. I have link this here for your convivence. … Page 21 will reference gapping requirements; fastening requirements will begin on page 23. At this time, we do not offer reps that are able to visit homes. We have a group of skilled employees who review images and are able to make decisions from there. Please reach out to us at 1-800-289-8739 if you need further assistance.[58]

<u>Retailer Review #15:</u>

On January 9, 2026, an account by the name of Casey posted the following review titled "Looks great to start, but warps when wet" in a Home Depot product review forum:

> I love the look of the new boards - can't beat the appearance when new, but once they get wet, they start to cup and warp. Yes, I used the TREX install methods to securely screw

---

58 *Id.*

> them down. And as others have mentioned in reviews, TREX is hard to keep clean-hosing it down won't clean it so it looks like dirt all the time. TREX starts out great because it looks so good until you install it. I spent close to $6000 for a really big deck and now I'm locked in to TREX forever. Ughhhh….

On the same day, Abby from Trex Customer Care responded to Casey's review, saying:

> Hello Casey, thank you for reaching out and sharing your experience. We sincerely apologize for the challenges you've encountered—this is not the experience we want for our Trex customers. We would love the opportunity to assist you further. Please reach out to us at your earliest convenience at 1.800.289.8739 or customercare@trex.com. We appreciate your feedback and look forward to making this right.[59]

72. Consumers have also aired their grievances towards Trex regarding the Defect in other online consumer forums, which should have put Trex on notice of the Defect. This includes the following:

<u>Consumer Complaint #1:</u>

On August 31, 2024, another consumer posted the following complaint on the same Better Business Bureau forum:

> We purchased Trex decking and railing systems for our new home at a cost of approximately $20,000. The decking was installed by contractors who have installed this decking before and according to the directions provided. The deck has has cupped and warped and pictures were send to Trex. They refused to even look at it and insisted it was an installation error and recommended we change the way it was fastened down, We did that and put in additional support where it was warping and cupping to no avail. [Trex] again refused to accept their product failure and just started sending auto replies to your messages. The woman we dealt with was very rude and adamant it was not their issue. Very disappointing, they would not even send a representative to evaluate….

Trex responded with the following:

> We are sorry that Mr. Mcgrath has experienced these issues with his decking material. To propose a remedy, we request that Mr. Mcgrath please send us proof of purchase of the Trex decking including the date of purchase. If he could also let us know the approximate date of installation, this would be helpful. Lastly, Mr. Mcgrath is requesting monetary compensation. Could he please also let us know if he has already replaced the decking

59 *Id.*

> and is therefore seeking only monetary compensation, or if his decking still needs to be replaced? I will also send these requests directly to Mr. Mcgrath by sending an email to the email address provided in the BBB complaint. Thank you.[60]

<u>Consumer Complaint #2:</u>

On September 5, 2024, another consumer posted the following complaint on the same Better Business Bureau forum: "About a year ago we had contractor install decking. The boards are warping up at bit joints. [Trex] wont do anything says not installed correctly. We hired a pro who knew what he was doing[.]" Trex responded stating that "the installer was not a TrexPro contractor and the issue that the consumer is experiencing with the product are related to installation that did not follow Trex installation instructions."[61]

<u>Consumer Complaint #3:</u>

On August 26, 2025, another consumer posted a complaint about the Defect on the Better Business Bureau page for Trex:

> We built a new home which we closed on November 25, 2024. Our home included an upper patio with Trex flooring and facia. The deck was installed in October, 2024 at which time I was living in [redacted]. While under construction my son sent pictures showing that the boards were warped and cupping. I immediately complained to the builder who advised that the boards would flatten out. Although I did not agree, the deck was completed. The boards never flattened and upon inspection in the early summer, the builder and sub-contractor both agreed the boards were warped. I was required to file a warranty claim with [Trex]. On approximately July 9, 2025 a claim was filed and acknowledged by [Trex] on July 10th. On July 14th I was requested to provide additional pictures which were immediately sent of the deck and boards. On August 5th I received an email advising that the claim was denied since the joists "may" not be level. They advised the materials did not leave their factory in this condition. They advised that a technical letter would immediately be sent (which I never received). I immediately requested…that a Trex representative do an on-site review since there is no way they could make a determination that the joists are not level by some photographs. As I

---

60 *Trex Company, Inc.: BBB Complaints*, BETTER BUSINESS BUREAU, https://www.bbb.org/us/va/winchester/profile/composite-decking/trex-company-inc-0241-7002680/complaints.

61 *Id.*

> understand, this is Trex's "standard" reply to warranty claims. I have not received any response to my request for an on-site review or any further word. I am requesting immediate replacement of the defective materials.

Trex did not respond to this complaint.[62]

<u>Consumer Complaint #4:</u>

On October 15, 2025, a consumer posted the following complaint on the Better Business Bureau page for Trex:

> This regards [Trex's] refusal to honor the warranty on their decking products and the misleading information I received about coverage and installation. I hired a contractor to install Trex decking materials based on their advertised durability and the assurance of a comprehensive warranty. Prior to purchase, I reviewed Trex[']s warranty documentation and spoke with the contractors who assured me that the product was covered against common issues such as structural defects. After experiencing significant issues with warping, gapping, fasteners lifting, and boards lifting, I submitted a warranty claim to [Trex]. Despite providing all requested documentation and photos, my claim was denied. Trex stated that the issues were due to improper installation by the independent contractor who performed the work. However, I strongly disagree with this assessment. The problems are clearly related to the product itself, not the installation. Furthermore, the contractor was selected based on [Trex's] own recommendation. [Trex] advertised this contractor as a certified [Trex] installer, which gave me confidence in choosing them. It is misleading for [Trex] to now distance themselves from the contractor and deny responsibility, especially when they promoted this installer as a trusted professional affiliated with [Trex who] attempted to resolve the issue directly with [Trex], but their customer service has been unresponsive and dismissive. I believe [Trex] is not honoring the spirit or the letter of their warranty and is failing to stand behind both their product and their endorsed installation network. I am requesting that the BBB investigate this matter and assist in facilitating a resolution. I am seeking either a full replacement of the defective materials or a refund for the affected portion of my purchase.

Trex responded to this complaint on November 3, 2025, reiterating that it "determined the deck installation does not align with Trex[']s recommended guidelines for gapping and

---

62 *Id.*

fastening" and stating that its "assessment found no indication of a material defect in the Trex product itself." The consumer rejected this response, stating:

> While the business puts all blame on the installer, whom they recommended, the product itself is certainly defective, as the product warped in multiple different spots within a year of being installed. After reviewing with the installer, he believes the product has a tendency to warp and says the product looks as hes seen on other deck installs. The 12 fascia is a poor quality product and needs to be removed and reinstalled. The material warranty AND the labor warranty should cover this work….[63]

73. Despite Trex's awareness of the Defect and the wealth of information provided by disgruntled customers, Trex has failed to reveal, repair, prevent or adequately respond to the Defect.

74. Trex knew that durability, longevity, and warp-resistance were always, and continue to be, material factors for consumers purchasing the Class Decking.

75. Trex concealed from and/or failed to disclose to the public at large—including the Plaintiff and the Class—the defective nature of the Class Decking and failed to remove the Class Decking from the marketplace or take adequate action to remedy the Defect. Rather, Trex continued selling the Class Decking and denying warranty claims for the Defect even though it knew, or was reckless in not knowing, that the Defect impacted the durability, longevity, and warp-resistance of the Class Decking and would ultimately result in the Class Decking failing to satisfy its intended purpose.

76. Moreover, Trex's omissions are accompanied by affirmative misrepresentations as to the Class Decking's durability, longevity, and immunity to warping, as detailed above.

---

63 *Id.*

C. **<u>Trex's Limited Warranty Fails to Remedy the Defect</u>**

77. To date, Trex has not presented or offered any kind of repair for the Defect. The only option for purchasers of the Class Decking once the Defect manifests is replacement.

78. Many owners of the Class Decking have communicated with Trex's employees and agents to request that Trex remedy and/or address the Defect at no expense, but Trex has failed and/or refused to do so. This includes denial of warranty claims well within the warranty period.

79. Despite knowing about the Defect in the Class Decking, Trex denies warranty claims based on generalized assertions that the Class Decking was improperly installed. These determinations are made based only on a handful of photos of the consumer's deck—photos which are almost always taken in order to submit a warranty claim after the Defect has already manifested. Trex has consistently refused and/or failed to send in-person inspectors out to the homes of customers experiencing the Defect to make the determination of whether the Class Decking was properly installed.

80. Had Plaintiff and Class members known about the Defect at the time of purchase, they would not have bought the Class Decking or would have paid substantially less for it.

81. The Defect manifests both inside and outside of the warranty period. As discussed herein, Trex routinely refuses to repair the Defect both inside and outside of the warranty period.

82. Trex sold the Class Decking with a standard Limited Warranty, which warrants that "for the applicable Warranty Period…when properly installed, used and maintained under

normal use and service conditions and in accordance with Trex's written instructions…[t]he Product shall be free from material defects in workmanship and materials…."[64]

83. Under the Limited Warranty, the "Product" is defined as those products listed in "Table I" of said document. This list includes, but is not limited to, Trex Enhance Decking and Fascia boards. Trex railing, lighting, and fencing products are expressly excluded from the Limited Warranty, and Trex fasteners and screws are covered by a separate warranty.[65]

84. The Warranty Period applicable to residential use of the Class Decking begins on the date of purchase and runs for 25 years.[66] The Limited Warranty may be transferred once between residential owners, so long as the transfer occurs within five years of purchase.[67]

85. The Limited Warranty provides that if a Trex representative finds that the Class Decking experiences a material defect in workmanship and materials, it will "at its option…either: (a) replace the affected Product with new Product in an amount equal to the volume (linear feet) of defective material; or (b) refund the portion of the purchase price paid by Purchaser for such affected Product (not including the cost of its initial installation)."[68]

86. The Limited Warranty includes the following in bold font: "THIS LIMITED WARRANTY SHALL NOT COVER AND TREX SHALL NOT BE RESPONSIBLE FOR COSTS AND EXPENSES INCURRED WITH RESPECT TO THE REMOVAL OF

---

64 TREX, TREX DECKING, FASCIA & CLADDING LIMITED WARRANTY 1 (2026), https://online.flippingbook.com/view/861215527/; *see also* TREX, 2024 DECKING INSTALLATION GUIDE 38 (2024), https://images.trex.com/is/content/trexcompany/2024_Trex_Decking_ Installation_Guide(update)pdf.

65 2026 TREX DECKING LIMITED WARRANTY 1.

66 *Id.*

67 *Id.*

68 *Id.* at 2.

DEFECTIVE PRODUCT OR THE INSTALLATION OF REPLACEMENT MATERIALS, INCLUDING BUT NOT LIMITED TO LABOR AND FREIGHT."[69]

87. The Limited Warranty is silent as to the warranty period applicable to replacement product.

88. The Limited Warranty attempts to exclude warranty coverage for a number of issues that could arise in the Class Decking, including "any condition attributable to…improper installation of the Product and/or failure to abide by Trex's installation guidelines."[70] This warranty exclusion does not state that a singular failure to abide by Trex's installation guidelines with respect to a single decking board voids warranty coverage for all other correctly installed decking boards.

89. None of the types of damage excluded from the Limited Warranty encompass damage caused by the Defect.

90. Mr. Poniatowski and other Class members were the intended beneficiaries of the Limited Warranty, because the Limited Warranty expressly states that it warrants the performance of the Class Decking "to the original end-use purchaser."[71]

91. Consumers seeking to file a warranty claim are frequently routed to "Customer Loyalty Advocates"—like Ms. Rosenberger in Mr. Poniatowski's case—despite the fact that these individuals are not representatives capable of processing a warranty claim, but rather customer service representatives that attempt to dissuade them from filing warranty claims. This is clearly displayed based on Mr. Poniatowski's initial interactions with Ms. Rosenberger.

---

69 *Id.*

70 *Id.* at 1.

71 *Id.*

92. Rather than honor its Limited Warranty, Trex routinely denies warranty claims based on allegations that the consumer or their installer did not follow the installation instructions, usually based on either insufficient gapping or misplacement of fasteners. These denials are made based on startlingly little information and Trex representatives rarely offer any explanation of how they deduced a slight installation error from a handful of photos provided by claimants—no less, photos taken after the Defect has already manifested, which may lead the Class Decking to appear improperly installed even though initial installation was correct.

93. In cases like that of Mr. Poniatowski, Trex's allegation that the Class Decking was improperly installed is affirmatively false, as confirmed by installers. Mr. Poniatowski's experience likewise shows that Trex has denied warranty coverage based on the consumer's failure to implement installation methods described as "optional" by Trex's own installation instructions.

94. Further, when denying warranty claims like Mr. Poniatowski's, Trex will deny warranty coverage for an entire deck without considering whether each individual decking board has been properly installed. Accordingly, Trex routinely denies warranty claims as to Class Decking boards that are properly installed based only on slight installation errors completely unrelated to those decking boards exhibiting the Defect.

95. When Trex does offer any kind of warranty remedy based on the Defect—which is rare—it only offers replacement of the Class Decking. However, in many cases, the cost of labor to disassemble a deck with the defective Class Decking and reassemble that deck using replacement boards far outweighs the value of the replacement decking boards provided by Trex.

**d. <u>FRAUDULENT CONCEALMENT ALLEGATIONS</u>**

96. Absent discovery, Plaintiff is unaware of, and unable through reasonable investigation to obtain, the true names and identities of those individuals at Trex responsible for disseminating false and misleading marketing materials regarding the Class Decking. Trex necessarily is in possession of all of this information. Plaintiff's claims arise out of Trex's fraudulent concealment of the Defect and the failures it causes, and Trex's representations about the Class Decking's premium quality, durability, and immunity to warping. To the extent that Plaintiff's claims arise from Trex's fraudulent concealment, there is no one document or communication, and no one interaction, upon which Plaintiff bases his claims.

97. Plaintiff alleges that at all relevant times, including specifically at the time he purchased the Class Decking, Trex knew, or was reckless in not knowing, of the Defect; Trex was under a duty to disclose the Defect based upon its exclusive knowledge of it, and its concealment of it; and Trex never disclosed the Defect to Plaintiff or the public at any time or place or in any manner.

98. Plaintiff makes the following specific fraud allegations with as much specificity as possible absent access to the information necessarily available only to Trex:

99. ***Who:*** Trex actively concealed the Defect from Plaintiff and Class members while simultaneously touting the premium quality, durability, and immunity to warping of the Class Decking, as alleged herein. Plaintiff is unaware of, and therefore unable to identify, the true names and identities of those specific individuals at Trex responsible for such decisions.

100. ***What:*** Trex knew, or was negligent or reckless in not knowing, that the Class Decking contained the Defect, as alleged herein. Trex concealed the Defect and made

representations about the premium quality, durability, warp-resistance, and other attributes of the Class Decking, as specified above.

101. ***When:*** Trex concealed material information regarding the Defect at all relevant times and made representations about the superior quality, durability, and immunity to warping of the Class Decking, starting no later than November 2018, or at the subsequent introduction of certain models of Class Decking to the market, continuing through the time of sale, and on an ongoing basis, and continuing to this day, as alleged above. Trex has never taken any action to inform the public at large about the true nature of the Defect in the Class Decking. And, with very few exceptions, when consumers presented their Class Decking to Trex complaining of the Defect, Trex denied any knowledge of or responsibility for the Defect, and in many instances (as detailed above) outright denied the existence of a problem, instead blaming consumers for unsupported installation errors.

102. ***Where:*** Trex concealed material information regarding the true nature of the Defect in every communication it had with Plaintiff and Class members and made representations about the premium quality, durability, and warp-resistance of the Class Decking. Aside from a very small number of private communications with purchasers, Plaintiff is aware of no document, communication, or other place or thing, in which Trex disclosed the truth about the Defect in the Class Decking to anyone outside of Trex. Such information is not adequately disclosed in any sales documents, displays, advertisements, warranties, owner's manuals, or on Trex's website.

103. ***How:*** Trex concealed the Defect from Plaintiff and Class members and made representations about the premium quality, durability, and warp-resistance of the Class Decking. Trex actively concealed the truth about the existence and nature of the Defect from Plaintiff and

Class members at all times, even though it knew about the Defect and knew that information about the Defect would be important to a reasonable consumer. Trex promised in its marketing materials that Class Decking has qualities that it simply not have, as stated above.

104. ***Why:*** Trex actively concealed material information about the Defect in the Class Decking and made false representations about the premium quality, durability, and warp-resistance of the Class Decking in order to either induce Plaintiff and Class members to purchase the Class Decking rather than competitors' decking or compel Plaintiff and Class members to pay an unjustified price premium for the Class Decking based on its advertised qualities. Had Trex disclosed the truth about the Defect, for example in its advertisements or other materials or communications, Plaintiff and Class members (all reasonable consumers) would have been aware of it and would either pay less for the Class Decking or not bought it at all. Moreover, Plaintiff and Class members would not have invested in substantial labor costs to install the Class Decking had they known about the Defect.

**e. <u>TOLLING OF THE STATUTE OF LIMITATIONS</u>**

105. Any applicable statute(s) of limitations have been tolled by Trex's knowing and active concealment and denial of the facts alleged herein. Plaintiff and Class members could not have reasonably discovered the true, latent nature of the Defect until shortly before this class action litigation was commenced.

106. In addition, even after Plaintiff and Class members contacted Trex for a replacement or refund of their Class Decking because of the Defect, they were routinely told by Trex representatives that the Class Decking were not defective and was instead caused by improper installation—even when the Class Decking was actually installed correctly.

107. Trex was and remains under a continuing duty to disclose to Plaintiff and Class members the true character, quality, and nature of the Class Decking. As a result of Trex's active concealment, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## f. <u>CLASS ACTION ALLEGATIONS</u>

108. Plaintiff brings this lawsuit on behalf of himself and all other persons similarly situated, pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3). The Class and Sub-Class are defined as follows:

> **Nationwide Class:** All persons in the United States who purchased the Class Decking within the applicable statute of limitations period.
>
> **Delaware Sub-Class:** All persons who purchased the Class Decking in the State of Delaware within the applicable statute of limitations period.

109. Plaintiff and Class members reserve the right to amend the Class definitions as discovery proceeds and to conform to the evidence.

110. Excluded from the Class are: (a) any Judge presiding over this action and members of their families; (b) Defendant and its parents, subsidiaries, affiliates, successors, assigns, officers, directors, or employees; (c) anyone employed by counsel for Plaintiff in this action; and (d) all persons who properly execute and file a timely request for exclusion from the Class.

111. ***<u>Numerosity</u>*****:** Members of the Class are so numerous that their individual joinder is impracticable. Moreover, the Class is composed of an easily ascertainable, self-identifying set of individuals and entities who purchased Class Decking. The precise number of Class members can be ascertained through discovery, which includes Trex's records. Plaintiff estimates the

number of Class members to be in at least the hundreds of thousands. The disposition of Plaintiff's claims through a class action will benefit both the parties and this Court.

112. The proposed classes are ascertainable because they are defined by reference to objective criteria. In addition, the names and addresses of all members of the proposed class can be identified in business records maintained by Defendant or its retail partners.

113. ***Commonality*:** There are questions of law and fact common to the Class that will materially advance the litigation, and these common questions predominate over any questions affecting only individual Class members. Among the questions common to the Class are:

- Whether the Class Decking suffers from a Defect that causes warping;
- What in Trex's manufacturing or design process caused the Defect in the Class Decking;
- When Trex became aware of the Defect in the Class Decking and how it responded to that knowledge;
- Whether Trex actively concealed and/or failed to notify consumers of the Defect in the Class Decking;
- Whether Trex knew of the Defect but failed to disclose the problem and its consequences to its customers;
- Whether a reasonable consumer would consider the Defect and its consequences to be material in purchasing the Class Decking;
- Whether Trex's conduct violates state consumer protection laws as asserted herein;
- Whether Trex's sale of Class Decking containing the Defect is an unfair, false, misleading, or deceptive act in the conduct of any trade or commerce;
- Whether Trex breached the implied warranty of merchantability by selling the Class Decking containing the Defect;

- Whether Plaintiff and the other Class members overpaid for their Class Decking as a result of the Defect herein;

- Whether Trex's warranty program is deceptive or unlawful, unfair, or fraudulent;

- Whether Trex's Limited Warranty fails of its essential purpose in failing to provide consumers with reimbursement for labor costs in conjunction with replacement of the defective Class Decking;

- Whether Plaintiff and Class members would have purchased their Class Decking, and whether they would have paid a lower price for them, had they known that it contained the Defect at the time of purchase;

- Whether Plaintiff and the Class are entitled to compensatory damages, including, among other things: (i) compensation for all out-of-pocket monies expended by members of the Class for replacement or repair of the Class Decking, including the cost of removing Class Decking containing the Defect and installing either different decking or replacement decking provided by Trex; (ii) compensation for all out-of-pocket monies expended by Class members to install the Class Decking with the undisclosed Defect; and (iii) the failure of consideration in connection with and/or difference in value arising out of the variance between the Class Decking as merchantable in the absence of the Defect, and as actually manufactured and sold possessing the Defect;

- Whether Plaintiff and the Class are entitled to all costs associated with repair and/or replacement of their Class Decking; and

- Whether Plaintiff and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief.

114. ***Typicality*:** Plaintiff's claims are typical of the claims of the members of the Class, as all such claims arise out of Trex's conduct in manufacturing, marketing, advertising, warranting, selling, and/or designing the Class Decking. All of Plaintiff's claims are typical of the claims of the Class because Plaintiff and all Class members were injured in the same manner by Trex's uniform course of conduct described herein. Plaintiff and all Class members have the same claims against Trex relating to the conduct alleged herein, and the events

giving rise to Plaintiff's claims for relief are identical to those giving rise to the claims of all Class members. Plaintiff and all Class members sustained monetary and economic injuries including, but not limited to, ascertainable losses arising out of Trex's wrongful conduct as described herein. Plaintiff is advancing the same claims and legal theories on behalf of himself as for all absent Class members.

115. ***Adequate Representation*****:** Plaintiff will fairly and adequately protect the interests of the members of the Class and has no interests antagonistic to those of the Class. Plaintiff has retained counsel experienced in the prosecution of complex class actions including, but not limited to, consumer class actions involving, *inter alia*, breaches of warranty, product liability, product defects, and state consumer fraud statutes.

116. ***Predominance*****:** This class action is appropriate for certification because questions of law and fact common to the members of the Class predominate over questions affecting only individual members.

117. ***Superiority*****:** A class action is superior to other available methods for the fair and efficient adjudication of this controversy, as individual joinder of all members of the Class is impracticable. Given the amount at issue for each Class member, individual suits would not be economically viable; however, should individual Class members bring separate actions, this Court would be confronted with a multiplicity of lawsuits burdening the judicial system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale, and comprehensive supervision by a single court.

## V. CAUSES OF ACTION

**COUNT I**
**VIOLATIONS OF DELAWARE CONSUMER FRAUD ACT**
**(6 Del. Code § 2511, *et seq.*)**
**(On Behalf of Plaintiff and the Delaware Sub-Class)**

118. Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

119. The Class Decking constitutes "merchandise" as defined in 6 Del. Code § 2511(6) because it is an object, ware, or good.

120. Plaintiff, the Class members, and Trex are all "persons" as defined in 6 Del. Code § 2511(7) because Plaintiff and the Class members are individuals and Trex is a corporation.

121. Trex engaged in the "sale" of merchandise under 6 Del. Code § 2511(8) by selling, offering for sale, or attempting to sell the Class Decking both directly and through retail partners.

122. Trex also engaged in the "advertisement" of merchandise under 6 Del. Code § 2511(1) by publishing, disseminating, or circulating written materials via its website, warranties, installation manuals, and marketing materials attempting to induce Plaintiff and the Class members to acquire the Class Decking.

123. The Delaware Consumer Fraud Act ("DCFA") prohibits the "act, use, or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale, lease, receipt, or advertisement of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby." 6 Del. Code § 2513(a).

124. Trex participated in deceptive trade practices that violated the DCFA through the conduct described below and alleged throughout this Complaint. By failing to disclose the Defect, concealing the Defect from Plaintiff and Class members, marketing the Class Decking as premium, durable, and immune to warping, and by presenting itself as a manufacturer of premium, durable, and long-lasting decking products that it would stand behind after sale, Trex knowingly and intentionally misrepresented and omitted material facts in connection with the sale and advertising of the Class Decking. Trex systematically misrepresented, concealed, suppressed, or omitted material facts relating to the Class Decking and the Defect in the course of its business.

125. Trex also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression, or omission in connection with the sale of the Class Decking. Namely, Trex intended to induce consumers to purchase the Class Decking and/or pay a premium price for the Class Decking.

126. Trex's unfair and deceptive acts or practices occurred repeatedly in its trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed an economic harm on the purchasing public by leading consumers to either purchase the Class Decking when they otherwise would not have had they known about the Defect or pay a substantial price premium for the Class Decking based on false or misleading information.

127. Trex also engaged in an unfair practice, as defined by 6 Del. Code § 2511(9), through the manner in which it operated its Limited Warranty program. Trex's Limited Warranty for the Class Decking provides that purchasers could receive replacement or a refund when their product exhibits "material defects in workmanship and materials," yet, knowing about the

Defect, it denied countless warranty claims clearly caused by the Defect based on unsupported accusations of improper installation. Further, when Trex would render such denials, it would do so as to an entire deck without considering whether each individual decking board was installed correctly, resulting in the inevitable denial of warranty claims for properly installed decking boards. This practice by Trex could not be reasonably avoided by consumers because they could not anticipate such a response to warranty claims before purchasing the Class Decking, and there are no countervailing benefits to consumers or competition that outweigh the harm this practice imposes on consumers. Consumers like Plaintiff and the Delaware Sub-Class members were also substantially injured by this practice because they paid a premium for the Class Decking based on the Limited Warranty's promise of a remedy should the product have a material defect, and absent this remedy, they were left with defective Class Decking of a lower quality than they paid for.

128. Trex knew that the Class Decking suffered from the Defect, was defectively designed and/or manufactured, and was not suitable for its intended use as a result, yet continued to sell and advertise the Class Decking as immune to warping without mention of the Defect, warrant that the Class Decking would be "free from material defects in workmanship and materials," [72] and deny warranty claims based on the Defect on unsupported claims that the Class Decking was improperly installed.

129. Trex knew or should have known that its conduct violated the DCFA.

130. Plaintiff and the Delaware Sub-Class members reasonably relied on Trex's misrepresentations and omissions of material facts in its advertisement of the Class Decking and in the purchase of the Class Decking.

---

[72] 2026 TREX DECKING LIMITED WARRANTY 1.

131. Had Plaintiff and the Delaware Sub-Class members known that the Class Decking would exhibit the Defect and the warranty program would be unfairly administered, they would not have purchased the Class Decking, or would have paid substantially less for it. Plaintiff and the Delaware Sub-Class members did not receive the benefit of their bargain as a result of Trex's misconduct.

132. Moreover, Plaintiff and the Delaware Sub-Class members would not have paid the substantial costs associated with professional installation of the Class Decking on their properties, or would not have personally invested their individual time and resources installing the Class Decking themselves, had they known that the Class Decking would exhibit the Defect.

133. Plaintiff and the Delaware Sub-Class members suffered injury in fact to a legally protected interest. As a result of Trex's conduct described herein, Plaintiff and the Delaware Sub-Class members were harmed and suffered actual damages in the form of the diminished value of the Class Decking and the substantial costs associated with installing decking which Plaintiff and the Delaware Sub-Class members would not have installed had they known about the Defect.

134. As a result of Trex's conduct, Plaintiff and the Delaware Sub-Class members were harmed and suffered ascertainable loss of money or property as a result of Trex's misrepresentations and omissions with regard to the Class Decking and its unfair warranty practices because they purchased decking boards which do not perform as advertised, are subject to premature warping, and provide an ineffective and unfairly administered warranty.

135. As a direct and proximate result of Trex's unfair and deceptive acts or practices, Plaintiff and the Delaware Sub-Class members suffered and will continue to suffer injury in fact and/or actual damages.

136. Plaintiff and Delaware Sub-Class members seek damages under the DCFA for injury resulting from the direct and natural consequences of Trex's unlawful conduct. *See, e.g., Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1077 (Del. 1983) ("A plaintiff [under the DCFA], therefore, may recover for any injury resulting from the direct and natural consequences of his acting on the strength of the defendant's statements.").

137. Defendant engaged in gross, oppressive, or aggravated conduct justifying the imposition of punitive damages.

**COUNT II**
**BREACH OF EXPRESS WARRANTY**
**(6 Del. Code § 2-313 and UCC § 2-313)**
**(On Behalf of Plaintiff, the Delaware Sub-Class, and the Nationwide Class)**

138. Plaintiff incorporates by reference each allegation set forth in the preceding paragraphs of this complaint.

139. Trex is and was at all relevant times a "merchant" and "seller" with respect to composite decking under UCC §§ 2-104(1) and 2-103(1)(d), respectively. This definition applies specifically to the Delaware Sub-Class under 6 Del. Code §§ 2-104(1) and 2-103(1)(d).

140. The Class Decking is and was at all relevant times a "good" within the meaning of UCC § 2-105(1). This definition applies specifically to the Delaware Sub-Class under 6 Del. Code § 2-105(1).

141. Trex extended express warranties to consumers, including Plaintiff and the Class, by way of product descriptions and representations as to product qualities and characteristics made in sales literature at retailers, on its website, and via advertisements, among other methods, as set forth above. In particular, Trex described the durability and performance of the Class Decking and made promises as to those characteristics that go well beyond mere puffery, including, but not limited to, the following warranties that:

- Trex composite decking is better than wood because it offers "superior durability and performance that you can't get from wood."
- Trex composite decking, including the Class Decking specifically, "won't rot, warp, or splinter."
- Trex composite decking, such as the Class Decking, is described as "A Deck That Lasts" and Trex warrants that "[w]hile wood decks often call it quits around the 15-year mark, Trex is built differently. Performance-engineered for the long haul, Trex decking comes with warranties ranging from 25 to 50 years, depending on your product line."
- Trex composite decking, such as the Class Decking, is described as providing "a smooth, safe surface that lasts for years."
- Trex composite decking, such as the Class Decking, is described as able to "stand up to both weather and weekend mishaps alike—they won't rot, warp, or splinter, and resists stains."

142. Trex also extends an express written warranty directly to consumers in the form of its Limited Warranty described above. The Limited Warranty warrants that the Class Decking "shall be free from material defects in workmanship and materials" for a period of 25 years in residential settings.

143. Each of these express warranties became part of the basis of the bargain underlying the purchase of Class Decking by Plaintiff and the Class members.

144. The Defect was present in the Class Decking at the time it was sold to Plaintiff and the Class members.

145. Plaintiff and the Class members relied on Trex's express warranties, which were a material part of the bargain when they purchased the Class Decking.

146. Under the Limited Warranty, Trex was obligated to correct the Defect in the Class Decking purchased by Plaintiff and the Class members, but it consistently failed to do so despite knowing about the Defect.

147. Although Trex was obligated to remedy the Defect under the Limited Warranty, it systematically refused to do so. Rather than providing warranty service when consumers reported the Defect, Trex and its representatives consistently used limited post-installation photographs as a pretext for denying warranty claims based on the Defect, which it knew about in advance. Trex would also deny claims under the Limited Warranty based on failure of consumers to adopt installation procedures described as "optional" by its own installation manual. Trex consistently refused to send representatives out to assess the installation of the Class Decking in person after consumers like Mr. Poniatowski would contest Trex's findings that the Class Decking was improperly installed. Further, when Trex would deny warranty claims on installation grounds, it would do so as to an entire deck without considering whether each individual decking board was installed correctly, resulting in the inevitable denial of warranty claims for properly installed decking boards. These practices ultimately resulted in the systematic and continuous denial of valid warranty claims based on the Defect.

148. In consistently and systematically denying valid warranty claims based on the Defect, Trex and its agents have failed and refused to conform the Class Decking to the express warranties they made to consumers. Trex's conduct, as discussed throughout this Complaint, has voided any attempt on its part to disclaim liability for its unfair and deceptive practices.

149. Moreover, any attempt by Trex to disclaim or limit these express warranties vis-à-vis consumers is unconscionable and unenforceable because it knowingly sold a defective product without informing consumers about the Defect. The Defect was latent and non-discoverable by reasonable inspection at the time Plaintiff and the Class members purchased the Class Decking.

150. Trex's attempt to exclude coverage for any labor costs involved in removing the defective Class Decking and installing replacement decking boards—costs which would far outweigh the value of the replacement decking boards themselves—while permitting Trex alone to decide "at its option" whether a consumer would get any other remedy under the Limited Warranty renders these warranty disclaimers and limitations even more unconscionable.

151. Plaintiff and the Class members had no meaningful choice in determining these disclaimers and limitations, the terms of which unreasonably favor Trex. A gross disparity in bargaining power existed between Trex and the Sub-Class members, especially in light of the fact that Trex knew or should have known that the Class Decking was defective at the time of sale.

152. Because Trex has refused to remedy the Defect for Plaintiff and the Class members and imposed unfair and unconscionable terms on consumers, any limitation on remedies included in the Limited Warranty causes such warranty to fail of its essential purpose, rendering it null and void.

153. Plaintiff and the Class members have complied with all obligations under the Limited Warranty, including ensuring proper installation of the Class Decking based on Trex's instructions, or they have otherwise been excused from performance of said obligations based on Trex's unfair and unconscionable conduct described herein.

154. While Mr. Poniatowski did in fact notify Trex of the breach of its Limited Warranty on August 6, 2024, April 21, 2025, and May 5, 2025, he and the Class members were not even required to notify Trex of breaches based on the Defect because affording Trex a reasonable opportunity to cure its breach would have been futile. Moreover, Trex was already on notice of the Defect from the various other warranty claims, online complaints, and reviews from

the Class members which consistently mentioned the Defect in the Class Decking, the internal testing and quality control procedures it implemented, and other internal and external sources described herein.

155. As a direct and proximate result of Trex's breach, Plaintiff and the Class members suffered damages and continue to suffer damages, including economic damages at the point of sale and diminution in the value of the Class Decking. Further, Plaintiff and the Class members have incurred or will incur economic damages in paying for installation of the defective Class Decking and either paying for removal of the defective Class Decking, installation of replacement decking boards, and/or labor from professionals to diagnose and mitigate the Defect in any way possible.

156. As a direct and proximate result of Trex's breach of express warranties, Plaintiff and the Class members have been damaged in an amount to be determined at trial.

157. Accordingly, under the facts and circumstances here present, Plaintiff and the Class members are entitled to all remedies provided under Article 2 of the UCC as adopted by the various states, as well as all other applicable remedies. This includes either refunding the full cost of the Class Decking or replacing the defective Class Decking with non-defective materials of at least the quality and grade marketed and promised, including coverage for the cost of shipment of such replacement materials, the cost of labor to remove the defective Class Decking, the cost of disposal for the defective Class Decking, and the cost of labor and supplies, including but not limited to fasteners, necessary to install the replacement materials, all at Trex's expense.

158. The Uniform Commercial Code, including Article 2 on Sales, was meant to harmonize the law governing commercial transactions across the United States. Every state in the United States besides Louisiana has adopted Article 2 of the UCC.

159. Trex has marketed its decking material nationwide throughout the proposed class period. Trex has behaved similarly in its dealings with, and has proffered similar warranty documents long after sales have occurred to, consumers across the United States who have complained about defective goods and Trex's breaches of warranty. Accordingly, not only does Delaware's version of UCC Article 2 apply as indicated, but the corresponding provisions of Article 2 of the UCC apply with respect to the claims of other plaintiffs and putative class members in the 48 other states (and the District of Columbia) where they have been adopted.

160. Applicable sections of Delaware's Article 2 are cited above. Companion codifications of Article 2 of the UCC include: Ala. Code § 7-2-101, *et seq.*; Alaska Stat. § 45.02.101, *et seq.*; Ariz. Rev. Stat. § 47-2101, *et seq.*; Ark. Code § 4-1-2, *et seq.*; Cal. Com. Code § 2101, *et seq.*; Colo. Rev. Stat. § 4-3-101, *et seq.*; Conn. Gen. Stat. § 42a-2-101, *et seq.*; D.C. Code § 28:2-101, *et seq.*; Fla. Stat. § 672.101, *et seq.*; Ga. Code § 11-2-101, *et seq.*; Haw. Rev. Stat. § 490:2-101, *et seq.*; Idaho Code § 28-2-101, *et seq.*; 810 Ill. Comp. Stat. § 5/2-101, *et seq.*; Ind. Code Ann. § 26-1-2-101, *et seq.*; Iowa Code § 554.2101, *et seq.*; Kan. Stat. § 84-2-101, *et seq.*; Ky. Rev. Stat. § 355.02.101, *et seq.*; Me. Rev. Stat. § 11. 2-101, *et seq.*; Md. Com. Law Code § 2-101, *et seq.*; Mass. Gen. Laws 106:2-101, *et seq.*; Mich. Stat. § 440.2101, *et seq.*; Minn. Stat. § 336.2-101, *et seq.*; Miss. Code Ann. § 75-2-101, *et seq.*; Vernon's Mo. Rev. Stat. § 400.2-101, *et seq.*; Mont. Code Ann. § 30-2-101, *et seq.*; Neb. Rev. Stat. § UCC-2-101, *et seq.*; Nev. Rev. Stat. § 104.2101, *et seq.*; N.H. Rev. Stat. § 382-A:2-101, *et seq.*; N.J. Stat. Ann. § 12A:2-101, *et seq.*; N.M. Stat. Ann. § 55-2-101, *et seq.*; N.Y. Gen. Bus. Law § UCC-2-101, *et seq.*; N.C. Gen. Stat. § 25-2-101, *et seq.*; N.D. Cent. Code § 41-02-01, *et seq.*; Ohio Rev. Stat. § 1302.01, *et seq.*; Okla. Stat. tit. § 12A-2-101, *et seq.*; Or. Rev. Stat. § 72.1010, *et seq.*; 13 Pa. Consol. Stat. § 2101, *et seq.*; R.I. Gen. Laws. § 6A-2-101, *et seq.*; S.C. Code Laws § 36-2-101, *et*

*seq.*; S.D. Code Laws § 57A-2-101, *et seq.*; Tenn. Code § 47-2-101, *et seq.*; Tex. Bus. & Com. Code § 2.102, *et seq.*; Utah Code Ann. § 70A-2-101, *et seq.*; Vt. Stat. Ann. tit. 9A, § 2-101, *et seq.*; Va. Code Ann. § 8.2-101, *et seq.*; Rev. Code Wash. 62A.2-101, *et seq.*; W. Va. Code § 46-2-101, *et seq.*; Wis. Stat. § 402.101, *et seq.*; and Wyo. Stat. § 34.1-2-101, *et seq.* As to the claims of Louisiana residents, the Civil Code and case law of that state applies.

**COUNT III**
**BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**
**(6 Del. Code § 2-314 and UCC § 2-314)**
**(On behalf of Plaintiff, the Nationwide Class, and the Delaware Sub-Class)**

161. Plaintiff incorporates by reference each allegation set forth in the preceding paragraphs of this Complaint.

162. Trex is and was at all relevant times a "merchant" and "seller" with respect to composite decking under UCC §§ 2-104(1) and 2-103(1)(d), respectively. This definition applies specifically to the Delaware Sub-Class under 6 Del. Code §§ 2-104(1) and 2-103(1)(d).

163. The Class Decking is and was at all relevant times a "good" within the meaning of UCC § 2-105(1). This definition applies specifically to the Delaware Sub-Class under 6 Del. Code § 2-105(1).

164. Trex directly sold and marketed the Class Decking to customers through its own online website and through retailers, suppliers, and lumberyards, like those from whom Plaintiff, the Delaware Sub-Class members, or their agents and contractors bought the Class Decking, for the intended purpose of consumers acquiring materials to build safe, durable, level, and structurally-sound outdoor decks. Trex knew that the Class Decking would and did pass unchanged from these retailers, suppliers, and lumberyards to Plaintiff and the Delaware Sub-Class members, with no modification to the defective Class Decking boards.

165. Plaintiff and the Class members were and are in privity with Trex in that they purchased the Class Decking from an actual or apparent agent of Trex, such as Trex's authorized dealers and retailers. Plaintiff and the Class members were and are also in privity with Trex by virtue of the contractual relationship stemming from Trex's manufacturer's warranty sometimes provided in conjunction with the purchase of Trex decking product, which is enforceable by Plaintiff and the Class members as against Trex, regardless of where, or from whom, the Trex product was acquired.

166. Trex impliedly warranted to Plaintiff and the Class members that the Class Decking was free of defects, that it was merchantable, and that it was fit for the ordinary purpose for which such goods are used, including installation in a residential outdoor setting, under UCC § 2-314 and 6 Del. Code § 2-314.

167. Trex knew or had reason to know of the ordinary purpose for which the Class Decking is normally used—namely, the construction of safe, durable, level, and structurally-sound outdoor decking surfaces.

168. This implied warranty included, among other things: (i) a warranty that the Class Decking manufactured, supplied, distributed, and/or sold by Trex was safe, durable, and reliable for use in constructing a stable, structurally-sound outdoor deck; and (ii) a warranty that the Class Decking would be fit for its intended use in providing a safe, durable, level, and structurally-sound outdoor deck.

169. Contrary to the applicable implied warranties, the Class Decking at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff and the Class members with safe, durable, level, and structurally sound decking surfaces. Instead, the Class Decking contains the Defect, which undermines the safety and durability of the Class

Decking by causing warping of the deck boards, which can contribute to instability and degradation of the deck. This Defect was caused by the defective design or manufacture of the Class Decking and only gets worse after installation of the Class Decking in its intended outdoor use cases. Trex knew about the Defect at the time the Class Decking was sold.

170. Trex knew or should have known that its product had the aforesaid properties and was defective, unmerchantable, and unfit for its intended use or purpose.

171. Trex's actions, as complained of herein, breached the implied warranty that the Class Decking was and is of merchantable quality and fit for such use in violation of UCC § 2-314 and 6 Del. Code § 2-314.

172. Trex's conduct in selling and marketing a defective product that warps, along with Trex's failure to disclose to Plaintiff and the Class the existence of the Defect, is also a breach of Trex's obligation of good faith and fair dealing.

173. Plaintiff and the Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Trex's conduct described herein.

174. While Mr. Poniatowski did in fact notify Trex of the breach of its Limited Warranty on August 6, 2024, April 21, 2025, and May 5, 2025, he and the Delaware Sub-Class members were not even required to notify Trex of breaches based on the Defect because affording Trex a reasonable opportunity to cure its breach would have been futile. Moreover, Trex was already on notice of the Defect from the various other warranty claims, online complaints, and reviews from the Class Members which consistently mentioned the Defect in the Class Decking, the internal testing and quality control procedures it implemented, and other internal and external sources described herein.

175. As a direct and proximate result of Trex's breach, Plaintiff and the Class members suffered damages and continue to suffer damages, including economic damages at the point of sale and diminution in the value of the Class Decking. Further, Plaintiff and the Class members have incurred or will incur economic damages in paying for installation of the defective Class Decking and either paying for removal of the defective Class Decking, installation of replacement decking boards, and/or working with professionals to mitigate the Defect in any way possible. Additionally, as a result of the Defect, Plaintiff and the Class members were harmed and suffered actual damages in that the Class Decking they purchased is substantially certain to experience the Defect long before its expected useful life has run, undermining the safety, durability, and general aesthetic appeal of the Class Decking.

176. As a direct and proximate result of Trex's breach of the implied warranty of merchantability, Plaintiff and the Class members have been damaged in an amount to be determined at trial.

177. As a result of Trex's breaches of the implied warranty of merchantability, Plaintiff and members of the prospective Class who reside in the states of Alaska, Arkansas, Colorado, Delaware, District of Columbia, Hawaii, Indiana, Kansas, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, North Dakota, Oklahoma, Pennsylvania, Rhode Island, South Carolina, South Dakota, Texas, Utah, Virginia, Washington, West Virginia, and Wyoming have been injured and are entitled to the full panoply of remedies provided under Article 2 of the UCC as adopted by the various states, as well as all other applicable remedies. These include refunds or replacement of the defective decking material with non-defective material of at least the quality and grade marketed and promised, as well as shipment of

replacement material to the plaintiffs' homes, the cost of labor to remove the defective material, the cost to dispose of the defective material, and the cost of labor and supplies, including but not limited to fasteners, necessary to install the replacement materials, all at Trex's expense. Class members who are residents of the state of Louisiana are entitled to the same relief for Trex's breaches of its implied warranty per the law of that state.

**COUNT IV**
**BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**
**(On behalf of Plaintiff, the Nationwide Class, and the Delaware Sub-Class)**

178. Plaintiff incorporates by reference each allegation set forth in the preceding paragraphs of this Complaint.

179. Plaintiff and the Class formed a contract with Trex when they purchased the Class Decking which included the Limited Warranty. The terms of the Limited Warranty include promises and affirmations of fact made by Trex to the end-user purchaser of the Class Decking – such as Plaintiff and the Class members – with respect to the nature of the Class Decking and available remedies in the case of a defect. The promises and affirmations of the Limited Warranty are described above.

180. Under Delaware law, an implied covenant of good faith and fair dealing inheres in every contract, including the contract formed between Trex and consumers resulting from the Limited Warranty. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

181. Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

182. Trex has breached the covenant of good faith and fair dealing implied in its Limited Warranty through its warranty claims policies and practices as alleged herein.

183. First, Trex has continuously and systematically denied warranty claims clearly based on the Defect in the Class Decking, like those submitted by Plaintiff and many members of the Class, despite knowing that the Class Decking contains the Defect.

184. In denying the warranty claims of Plaintiff and the Class members, Trex consistently claimed that "installation errors" voided the warranty coverage, despite being unable to explain how that conclusion was reached based on only a handful of digital photographs, usually taken after the Class Decking was installed and experiencing the Defect. As mentioned herein, the installation instructions for the Class Decking include precise measurements that go as small as 1/16 of an inch, but Trex could not reasonably have found such minute installation errors from the limited photographs provided by warranty claimants. When consumers requested to have a representative sent to their home to assess whether installation was proper, Trex denied these requests, instead just denying warranty coverage outright.

185. Moreover, Trex's practice of denying warranty coverage for Class Decking experiencing the Defect also involved overbroad denials of warranty coverage for a customer's entire deck without any assessment of whether each individual decking board was properly or improperly installed. This practice could result in properly installed decking boards being denied

warranty coverage for alleged "installation errors" that have no bearing on the manifestation of the Defect.

186. Trex uses its contractual discretion under the Limited Warranty to unjustifiably deny warranty coverage for the Class Decking after it begins experiencing the Defect. Rather that provide warranty coverage for the Defect in the Class Decking, as promised by Trex's Limited Warranty, Trex hid behind generalized and unsupported claims of "installation errors" to deny consumers the relief to which they were entitled.

187. Plaintiff and Class members have performed all, or substantially all, of the obligations imposed on them under the Limited Warranty.

188. Plaintiff and Class members have sustained damages as a result of Trex's breach of the covenant of good faith and fair dealing.

**COUNT V**
**VIOLATIONS OF THE MAGNUSON-MOSS CONSUMER WARRANTY ACT**
**(Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*)**
**(On behalf of Plaintiff and the Nationwide Class)**

189. Plaintiff incorporates by reference each allegation set forth in the preceding paragraphs of this Complaint.

190. The Class Decking is a "consumer product" as defined in 15 U.S.C. § 2301(1).

191. Trex is a "supplier" and a "warrantor" of the Class Decking as defined in 15 U.S.C. §§ 2301(4) and (5).

192. Plaintiff and Class members are "consumers" as defined in 15 U.S.C. § 2301(3).

193. The federal Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301–2312 ("Magnuson-Moss"), is a consumer protection statute designed to supplement state warranty law.

194. Magnuson-Moss provides consumers with a cause of action for breach of warranty, or for other violations of the statute. 15 U.S.C. § 2310(d)(1).

195. Trex provided Plaintiff and Class members with an express warranty in the form of its Limited Warranty, which provided that the Class Decking "shall be free from material defects in workmanship or materials" for a period of 25 years in a residential setting. [73]

196. Trex has breached its express warranty by selling the Class Decking to Plaintiff and Class members despite knowing that the Class Decking contained the Defect. Ultimately, Trex had no intention of honoring its warranty with respect to the known Defect.

197. Trex has also breached its implied warranty of merchantability—which it cannot disclaim under Magnuson-Moss, 15 U.S.C. § 2308(a)(1)—by selling to Plaintiff and the Class members the Class Decking despite such product not being of merchantable condition or fit for ordinary use.

198. Plaintiff and Class members have suffered damages as a result of Trex's breaches of its express and implied warranties, as set forth herein. Namely, Plaintiff and Class members have been damaged by the diminished value of the Class Decking and/or their reliance on Trex's representations that the Class Decking would not contain material defects in workmanship or materials, which caused them to pay for decking they may otherwise not have purchased absent these false representations, pay a price premium for the class decking which they may not have been willing to pay had they known of the Defect, and/or in paying the substantial labor costs associated with properly installing the Class Decking.

199. As a direct and proximate result of Trex's breach of its express written warranties, Plaintiff and Class members have been damaged in an amount to be proven at trial.

---

[73] 2026 TREX DECKING LIMITED WARRANTY 1.

200. Thus, Trex's acts and omissions in violation of Magnuson-Moss are "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce," rendering them unlawful.

201. The language included in Trex's written warranties purportedly limiting its liability for breaches of warranty is unconscionable and unenforceable. In particular, these attempted disclaimers or limits of liability are unconscionable because Trex knowingly sold a defective product without informing consumers about the Defect, it has systematically denied valid warranty claims based on the Defect, and the terms of Trex's warranty unfairly permit only Trex to decide whether to grant a consumer with a valid warranty claim replacement boards or a refund. Plaintiff and Class members had no meaningful choice in determining these disclaimers and limitations, the terms of which unreasonably favor Trex. A gross disparity in bargaining power existed between Trex and the Class members, especially in light of the fact that Trex knew or should have known that the Class Decking was defective at the time of sale.

202. Because Trex has refused to remedy the Defect for Plaintiff and the Class members, any limitation on remedies included in the Limited Warranty causes such warranty to fail of its essential purpose, rendering it null and void.

203. At no time has Trex offered Plaintiff a permanent or adequate remedy for the Defect under the express warranties. Trex's refusal to provide a permanent replacement, refund, or repair for the Defect and to pay for any costs associated with Plaintiff installing the defective Class Decking violates 15 U.S.C. § 2304(d)(1).

204. Trex was afforded a reasonable opportunity to cure its breach of express warranty but failed to do so. Under 15 U.S.C. § 2310(e), notice of breach of warranty need not be

provided until after Plaintiff has been appointed as class representative; nevertheless, Trex has been notified.

205. Magnuson-Moss provides for "other legal and equitable" relief where there has been a breach of warranty or failure to abide by the obligations that Magnuson-Moss imposes. 15 U.S.C. § 2310(d)(1). Accordingly, Plaintiff and the Class members seek reformation of Trex's warranty documents to comport with Trex's obligations under Magnuson-Moss. In addition, they seek to enjoin Trex from acting unlawfully as alleged herein, including with respect to its practices aimed at discouraging or denying consumers who purchased defective Trex products from seeking or receiving the full scope of remedies to which they are entitled.

206. Magnuson-Moss also provides for an award of costs and expenses, including attorneys' fees, to prevailing consumers in connection with the commencement and prosecution of lawsuits thereunder, unless the Court in its discretion determines that such an award would be inappropriate. 15 U.S.C. § 2310(d)(2). Plaintiff and the Class members intend to seek such an award, including expert witness costs and other recoverable costs, as prevailing consumers at the conclusion of this case.

## COUNT VI
## COMMON LAW FRAUD BY CONCEALMENT OR OMISSION
**(On behalf of Plaintiff and the Nationwide Class and, in the alternative, the Delaware Sub-Class)**

207. Plaintiff incorporates by reference each allegation set forth in the preceding paragraphs.

208. Trex concealed and suppressed material facts concerning the quality of the Class Decking. In particular, Trex concealed and suppressed material facts concerning the Defect.

209. The Defect is latent and results from the composition of the materials in the Class Decking and/or the design of the decking boards, including the scalloped underside of said

boards. Trex knew that Plaintiff and Class members would not be able to inspect or otherwise detect the Defect prior to purchasing the Class Decking. Trex furthered and relied upon this lack of disclosure to promote further sales, all the while concealing the true defective nature of the Class Decking from Plaintiff and Class members.

210. Trex concealed and suppressed material facts showing that the Class Decking was defective and instead denied that the Defect exists. For example, Trex's representatives regularly told consumers like Plaintiff and various other Class members that Class Decking experiencing the Defect was not defective, but rather was experiencing warping due to installer error. Trex made these representations despite knowing about the Defect.

211. Trex did so in order to boost confidence in its Class Decking and falsely assure purchasers that the Class Decking was durable, long-lasting, and immune to warping under regular residential use conditions. Trex concealed this information about the Defect in order to prevent harm to itself and its products' reputations in the marketplace and to prevent consumers from learning of the defective nature of the Class Decking prior to its purchase. These false representations and omissions were material to consumers, both because they concerned the quality of the Class Decking and because the representations and omissions played a significant role in Plaintiff and Class members' decision to purchase or lease the Class Decking.

212. Trex had a duty to disclose the Defect in the Class Decking because: it was known and/or accessible only to Trex; Trex had superior knowledge and access to the facts; and Trex knew the facts were not known to or reasonably discoverable by Plaintiff and Class members.

213. Trex also had a duty to disclose because it made many general affirmative representations about the quality, warranty, and lack of defects in the Class Decking as set forth

above, which were misleading, deceptive, and/or incomplete without the disclosure of the additional facts set forth above regarding the Class Decking's actual durability, longevity, and immunity to warping. Even when faced with complaints regarding the Defect, Trex misled and concealed the true cause of the Defect, as seen by Mr. Pontiatowski firsthand. As a result, Class members were misled as to the true condition of the Class Decking once at the time of purchase and again when the Defect was complained of to Trex. The omitted and concealed facts were material because they directly impact the value, appeal, and usability of the Class Decking purchased by Plaintiff and Class members. Whether a manufacturer's products are as stated by the manufacturer, backed by the manufacturer, and usable for the purpose for which they were purchased, are material concerns to any consumer.

214. Trex actively concealed and/or suppressed these material facts, in whole or in part, to protect its reputation, sustain its marketing strategy, and avoid recalls that would affect the brand's image and cost money, and it did so at the expense of Plaintiff and Class members.

215. Trex still has not made full and adequate disclosure and continues to mislead Plaintiff and Class members and conceal material information regarding the Defect in the Class Decking.

216. Plaintiff and Class members were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed or suppressed facts, in that they would not have purchased the Class Decking nor any decking manufactured by Trex, they would have chosen different decking models not known to possess the Defect. Plaintiff and Class members' actions were justified. Trex was in exclusive control of the material facts and such facts were not known to the public, Plaintiff, or Class members.

217. Because of the concealment and/or suppression of the facts, Plaintiff and Class members sustained damages because they paid value for the Class Decking unaware of the Defect that Trex failed to disclose, and many paid for service, cleaning, repairs, or replacement decking to remedy the Defect. Had Plaintiff and Class members been aware of the concealed Defect that existed in the Class Decking, Plaintiff and Class members would have paid less for the decking or would not have purchased and installed it at all.

218. Moreover, Trex's concealment and/or suppression of facts about the Defect damaged Plaintiff and Class members by creating a safety hazard on their decks. Namely, the warping of the Class Decking created a tripping hazard from the uneven decking surface and a slipping hazard from the propensity of the boards to keep water pooled on the board's surface.

219. Accordingly, Trex is liable to Plaintiff and Class members for damages in an amount to be proven at trial.

220. Trex's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Class members' rights and well-being to enrich Trex. Trex's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT VII
## UNJUST ENRICHMENT/RESTITUTION
**(On behalf of Plaintiff and the Nationwide Class and, in the alternative, the Delaware Sub-Class)**

221. Plaintiff incorporates by reference each preceding and succeeding paragraph of this Complaint as though fully set forth at length herein.

222. Trex has been unjustly enriched as a result of the conduct described in this Complaint, including by Plaintiff and Class members purchasing Class Decking from Trex

and/or purchasing services or replacement decking from Trex that Plaintiff and Class members would not have purchased but for Trex's misconduct alleged above with respect to the Defect.

223. Plaintiff and Class members unknowingly conferred a benefit on Trex of which Trex had knowledge since it was aware of the defective nature of the Class Decking and the resultant performance problems but failed to disclose this knowledge and misled Plaintiff and Class members regarding the nature and quality of the Class Decking while profiting from this deception.

224. Retention of these benefits by Trex would be unjust and inequitable because Trex received these benefits by engaging in a false, deceptive, and misleading scheme to market the Class Decking as durable, long-lasting, and immune to warping, and by engaging in the unlawful, unjust, and wrongful acts and practices described in this Complaint.

225. The circumstances are such that it would be inequitable, unconscionable, and unjust to permit Trex to retain the benefit of profits that it unfairly obtained from Plaintiff and Class members. These profits include the premium price Plaintiff and the Class paid for the Class Decking and the cost of the service or replacement decking bought from Trex to temporarily or permanently alleviate the Defect.

226. The benefits, in whole or in part, that Trex received were not legitimately earned and came at the expense of Plaintiff and the other members of the Class.

227. Trex knows that the above-described conduct is unjust, inequitable, and wrongful, but systematically engages in this scheme anyway in order to gain unfair advantages and reap unearned financial benefits.

228. Trex is guilty of malice, oppression, and/or fraud through its willful and conscious disregard for the rights of Plaintiff and other Class members.

229. Plaintiff and the Class members are entitled to restitution and disgorgement of all amounts unjustly retained by Trex, as well as other appropriate relief.

## VI. JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

## VII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs prays for a judgment against Defendant as follows:

a. Entering judgment in favor of Plaintiffs against Defendant;

b. Certification of the proposed Class pursuant to Federal Rule of Civil Procedure 23;

c. Appointment of Plaintiff as Class Representative for the Class;

d. Appointment of Plaintiffs' counsel as Class Counsel;

e. A declaration that Trex violated the federal and Delaware statutes that form the basis for Plaintiff's primary statutory claims;

f. A declaration that Trex was unjustly enriched by its conduct as described herein;

g. Monetary damages, including but not limited to, compensatory damages, general damages, and nominal damages;

h. Punitive damages;

i. Restitution;

j. Injunctive relief;

k. Disgorgement of all monies received by Trex as a result of the unlawful, unjust, unfair, and deceptive acts and practices described herein;

l. Penalties as provided by law;

m. A permanent injunction enjoining Trex from continuing the unlawful, unjust, unfair, and deceptive acts and practices described herein;

n. Pre-judgment and post-judgment interest;

o. An award of attorneys' fees and costs, under Magnuson-Moss, and as otherwise allowed by law; and

p. Such other further relief that the Court deems just and equitable.

Dated: August 14, 2026

Respectfully Submitted,

*<u>/s/ Christopher T. Hadsall</u>*
Christopher T. Hadsall (VSB No. 100658)†
Nicholas A. Migliaccio*
Jason S. Rathod*
**MIGLIACCIO & RATHOD LLP**
412 H Street NE, Suite 302
Washington, DC 20002
Tel: (202) 470-3520
chadsall@classlawdc.com
nmigliaccio@classlawdc.com
jrathod@classlawdc.com

***Attorneys for Plaintiff***

* Pending *pro hac vice* admission

† Admitted in Virginia only; practice in this District of Columbia office location limited to matters authorized by D.C. Court of Appeals Rule 49(c).